[No. 7,658.—In Bank.]

## W. W. CAMRON *v.* D. M. KENFIELD ET AL.

DICTUM — RES JUDICATA — DECISION OF SUPREME ' COURT — PROHIBITION — DRAINAGE ACT.—The Supreme Court, in refusing a writ of prohibition, decided that the Legislature could not constitutionally extend the office of the writ beyond its scope at common law. It also decided in the same case that the Legislature had not attempted to so extend it. *Held*, that the latter point decided did not render the first *obiter dictum*.

PROHIBITION — CONSTITUTIONAL LAW — JURISDICTION — DRAINAGE ACT.—The Legislature had no power to enact the statute which purports to amend § 1102 of the Code of Civil Procedure, in so far as it attempts to enlarge the office of the writ of prohibition.

ID.—ID.—ID.—ID.—SUPREME COURT.—THORNTON, J., concurring, was of the opinion that the Legislature might enlarge the office of the writ when issuing from the Superior Court, but could not so enlarge the jurisdiction of the Supreme Court.

PETITION for the writ of prohibition.

The defendant Kenfield was the Controller, and the defendant Weil was the Treasurer, of the State of California.

*James A. Waymire*, for Plaintiff.

The Supreme Court has never decided that the Legislature cannot alter or regulate the remedy of prohibition; on the contrary, it has expressly reserved that point. (*Maurer* v. *Mitchell*, 53 Cal. 289.)

The constitution does not prohibit the Legislature from enlarging the remedy. Whatever belongs merely to the remedy may be altered according to the will of the Legislature.

It is conceded that the word "prohibition" is used in the Constitution in its common-law sense, as stated in *Maurer* v. *Mitchell, supra;* but in its *American* common-law sense—in the sense that as any other part of the common law—it may be altered by statute.  (High on Ex. Leg. R. §§ 4, 5.)

Now, has the Legislature attempted to enlarge or alter the office of the remedy?  By a recent act, § 1102 of the Code of Civil Procedure is applicable to " arrest the proceedings of any * * * person, *whether exercising functions judicial or ministerial,* when such proceedings are without or in excess of the jurisdiction of such * * * person."

There has never been any question that the writ would lie to restrain the ministerial act of a judicial officer.  It was not necessary to amend the statute for that purpose.  Unless something else was intended, the amendment is meaningless.  Clearly it was the intention to make the writ applicable to officers or other persons performing duties prescribed by law, where they were about to exceed their authority—to do an unlawful act.

Even at the common law in England, the writ was always regarded with favor.

In *Gould* v. *Gopper*, 3 East, 365, Lord Ellenborough said : " We cannot feel ourselves warranted in holding that the grounds of granting prohibitions are so narrow and limited as to be confined solely to cases of excess of jurisdiction."

In *Leman* v. *Goulty*, 3 Term Rep. 3, Lord Kenyon said : " The scope of this remedy ought not, I think, to be abridged, as it is far better to prevent the exercise of an unauthorized power than to be driven to the necessity of correcting the error after it is committed."

It is true the writ was used chiefly to restrain judicial bodies or tribunals, as the necessity for such use was greater than any other.  But in this country it has often been employed to restrain ministerial acts.  ( *Weston* v. *City of Charleston*, 2 Peters, 449 ; *Herriman* v. *County Commissioners*, 53 Me. 83 ; *Day* v. *Board of Aldermen of Springfield*, 102 Mass. 310 ; *Clark* v. *Rosender*, 5 Rob. (La.) 27 ; *Donovan* v. *Mayor of Vicksburg*, 29 Miss. 248 ; *Burger* v. *Coster*, 1 McMull. 418 ; *Covarrubias* v. *Supervisors of Santa Barbara County*, 52 Cal. 622.)

All other common-law remedies have been modified, from

time to time, in England, by the mere progress of judicial construction. None of them now have the technical meaning they first had.

Besides, in drawing warrants, the controller exercises judicial functions. (*People* v. *Oakland Board of Education*, 54 Cal. 375; *People* v. *Board of Education*, 49 id. 684.)

" Wherever an act undertakes to determine a question of right or obligation, or of property, as the foundation upon which it proceeds, *such act is to that extent a judicial one*, and not the proper exercise of legislative functions." (Field, J., in *Sinking Fund Cases*, 99 U. S. 761.)

In the very recent case of *Hartman* v. *Greenhow* (Alb. L. J. January 24th, 1881), the United States Supreme Court says:

" A mandamus in cases of this kind *is no longer regarded as a mere prerogative writ. It is nothing more than an ordinary proceeding or action*, in which the performance of a specific duty, by which the rights of the petitioner are affected, is sought to be enforced. Says Mr. Chief Justice Taney (in *Kentucky* v. *Dennison*, 24 How. 97): 'It undoubtedly came into use by virtue of prerogative power in the English Crown, and was subject to regulations and rules which have long since been disused; but the right to the writ and the power to issue it have ceased to depend upon any prerogative power; and it is now regarded as an ordinary process in cases to which it is applicable.' "

When the present Constitution was framed, our Code (§ 1102) provided that " the writ of prohibition is the counterpart of the writ of mandate." The Constitution, in defining the jurisdiction of this Court, uses the names of the two writs in the same connection. (Art. vi, § 4.)

If mandamus is an ordinary proceeding, prohibition, which is its *counterpart*, cannot be other than an ordinary proceeding also. And if it be an ordinary remedy, the Legislature can regulate it as it can any other remedy.

*W. H. Sears*, also for Plaintiff.

*A. L. Hart*, Attorney-General, for Defendant.

The writ at common law could only issue to superior judicial tribunals exercising judicial functions. And the term is used

in this sense in the Constitution. (*Maurer* v. *Mitchell*, 53 Cal. 289; *S. V. Water Works* v. *San Francisco*, 52 id. 11; *People* v. *Election Commissioners*, 54 id. 404.)

It is not competent for the Legislature, by extending the office of the writ, to enlarge the jurisdiction of the Supreme Court.

The COURT:

This is a petition for a *writ of prohibition* commanding the Controller to refrain and desist from drawing warrants upon the treasury in payment of any claims arising under the Act of April 23rd, 1880, entitled "An Act to promote drainage," and the Treasurer from paying out any money upon such warrants.

Section 4 of article vi of the Constitution of the State provides that the Supreme Court shall have power " to issue writs of mandamus, certiorari, prohibition, and habeas corpus." The same language was employed in the former Constitution.

In *Maurer* v. *Mitchell*, 53 Cal. 291, it was said: "We are all of opinion that the writ mentioned in the Constitution is the writ of prohibition as known to the common law." And in *Spring Valley Water Works* v. *The City and County of San Francisco*, 52 Cal. 111, it was said: "At the common law, the writ of prohibition was issued on the suggestion that the cause originally, or some collateral matter arising therein, did not belong to the inferior jurisdiction, but to the cognizance of some other Court. It was an original remedial writ provided as a remedy for the encroachment of jurisdiction. Its office was to restrain subordinate Courts and inferior *judicial tribunals* from exceeding their jurisdiction."

These two cases are decisive of the present application.

At the time of the decision in *Maurer* v. *Mitchell*, § 1102 of the Code of Civil Procedure read: "The writ of prohibition is the counterpart of the writ of mandate. It arrests the proceedings of any tribunal, corporation, board, or person, when such proceedings are without or in excess of the jurisdiction of such tribunal, corporation, board, or person." It was decided that this language did not require of the Court to hold that the office of the writ had been extended. Such construction of the statute, however, did not make what was said in respect to the meaning of the Constitution mere *dictum*. It only furnished

another and separate reason why the writ should be denied in that case. It might as well be urged that what was said in *Maurer* v. *Mitchell*, with reference to the meaning of the section of the Code, was unnecessary to the conclusion reached by the Court; and by such reasoning, a case which distinctly determines *two* questions would become an authoritative determination of neither. The new Constitution was framed in view of the construction of the language used in the former Constitution, unanimously concurred in by the members of the highest tribunal of the State. Yet the framers of the present Constitution repeated the words employed in the former. We are forced to the conclusion that they used these words in the sense which had been attributed to them by the Supreme Court.

It follows that the Legislature had no power to enact the statute which purports to amend § 1102 of the Code of Civil Procedure, and to provide that the writ shall arrest the proceedings (in excess of jurisdiction) of any tribunal, corporation, board, or person, " whether exercising functions judicial *or ministerial*," in so far as it attempts to extend the office of the writ.

Writ denied and proceedings dismissed.

THORNTON, J., concurring:

In concurring in this opinion, I limit it to the extension of the writ mentioned therein by the Act of the Legislature to the orignal jurisdiction of this Court. I do not think such jurisdiction can be added to by the Legislature. It may be that the Legislature has the power to extend the scope of a writ of the kind spoken of in the opinion, whether it be called *prohibition* or not, to the Superior Courts; but on this point no definite judgment is here intended to be expressed.