`(October 1, 1898.)`

## WILLIAMS v. LEWIS, SECRETARY OF STATE.

### [54 Pac. 619.]

WRIT OF MANDATE—SECRETARY OF STATE.—Writ of mandate is the proper proceeding to compel the Secretary of State to file and certify a ticket entitled to filing and certification by such officer.

WRIT OF PROHIBITION—SECRETARY OF STATE.—Writ of prohibition, under the statutes of Idaho, will lie to restrain the action of a ministerial officer, when it appears that such action is illegal and beyond his jurisdiction as the Secretary of State in certifying to the county auditors a ticket not entitled to be certified.

RIVAL CONVENTIONS—SAME PARTY—OFFICIAL BALLOT—WHO ENTITLED TO.—Where a contention between two conventions of the same party arises as to which is entitled to have the ticket nominated by it placed upon the official ballot under the recognized party name, *held,* that the convention called by the regular state central committee of the party is entitled to have the ticket nominated by it placed upon the official ballot under the party name or designation.

OFFICIAL BALLOT—ONLY ONE TICKET OF SAME PARTY.—Under the statutes of Idaho only one ticket under the recognized name or designation of a political party is entitled to be placed upon the official ballot.

(Syllabus by the court.)

Original proceedings for writ of mandate and writ of prohibition.

N. M. Ruick, for Plaintiff.

No brief filed.

T. J. Jones, S. B. Kingsbury and George M. Parsons, for Defendant.

No brief found on file. .

Per CURIAM.—Plaintiff petitions for a writ of mandate to the Secretary of State, commanding him to file and certify to the various county auditors of the state a certain ticket containing, as is alleged in the petition, the names of the

candidates for the various state offices and member of Congress to be elected at the coming biennial election in November next, nominated by the People's Party, at a convention of said party regularly called and held at Boise City, on August 24, 1898, and which ticket, it is alleged, the said Secretary of State refuses to either file or certify as requested. Plaintiff is named on said ticket as the candidate for the office of lieutenant-governor. At the same time, plaintiff files a petition for a writ of prohibition to the Secretary of State, commanding him not to certify to said county auditors a certain other ticket, heretofore filed with him, and purporting, as is alleged in said petition, to contain the names of the candidates for the various state offices and member of Congress, as aforesaid, nominated by the People's Party. To both petitions defendant files a general demurrer and motions to quash.

It will be seen that here are two sections or factions of one party, or two distinct parties under the same name or designation, to wit, the "People's Party," claiming the right to have their several tickets filed and certified and placed upon the official ballot as the ticket of the "People's Party." It is conceded that under our statutes but one of said tickets is entitled to a place upon the official ballot. It is contended by defendant that, he having already filed one ticket under the name and designation of the "People's Party" ticket he cannot be required to file another under the same name or designation. In making this contention at this time, counsel is anticipating a condition which is not before the court. Upon the petition for writ of mandate, we are considering a demurrer to the complaints or petitions, and it does not appear therefrom that any ticket has been filed or certified. The only question before the court at this time is, Do the complaints state facts sufficient to constitute a cause of action? The object and purpose of the election law was and is to protect the purity of the ballot, to protect the citizen in the exercise of the elective franchise from fraud, deception, compulsion or intimidation; and in securing that right, we think it is proper for the citizen to invoke the aid of the courts.

Political parties are a necessary incident to popular government, and they have found recognition in the statute; and any

attempt to deprive them of the rights secured to them by law entitles them to invoke the protection of the courts. If, therefore, a "convention or primary meeting representing a political party or principle" has put in nomination a ticket, naming therein the candidates of such party to be voted for at an ensuing election, it is *prima facie* entitled to have such ticket filed and duly certified by the Secretary of State, upon presentation to him as required by law. The complaint, we think, sets forth a case entitling the petitioner to the relief sought by mandate. The objection of counsel for defendant that *mandamus* is not the proper remedy we do not think well taken. The demurrer to the petition for writ of mandate is overruled.

The demurrer to the complaint for a writ of prohibition is urged upon the ground that such writ is sought to prevent or prohibit the act of an official purely ministerial in its character; and this contention is supported by several decisions of the supreme court of California, from which state our statute upon the subject was taken. The purpose of the common-law writ of prohibition was to suspend or stop the action of an inferior judicial tribunal, when such tribunal was acting or contemplated acting beyond its jurisdiction. The authorities hold that the common-law writ of prohibition will not lie to prohibit an act that is purely ministerial. We think, however, there is a distinction between the California conditions and those of Idaho. By section 1866 of the Revised Statutes of the United States it is provided that the jurisdiction of the courts provided for in sections 1907 and 1908 (U. S. Rev. Stats.), both original and appellate, shall be limited by law. By the Revised Statutes of Idaho of 1887 (section 3816), while Idaho was still a territory, it is provided that the original jurisdiction of the supreme court extends to the issuance of writs of mandate, review, prohibition, *habeas corpus,* and all writs necessary to the exercise of its appellate jurisdiction. Section 4994 of the Revised Statutes of Idaho of 1887 is as follows: "The writ of prohibition is the counterpart of the writ of mandate. It arrests the proceedings of any tribunal, corporation, board or person when such proceedings are without, or in excess of, the jurisdiction of such tribunal, corporation, board or person." Sec-

tion 4995: "It may be issued by any court except probate or justices' courts, to an inferior tribunal, or to a corporation, board or person, in all cases where there is not a plain, speedy and adequate remedy in the ordinary course of law." By section 1851 of the Revised Statutes of the United States, the legislative power of the territories was declared to extend to all rightful subjects of legislation, and not inconsistent with the constitution and laws of the United States. The defining of the functions of the writ of prohibition was a rightful subject of legislation. The original jurisdiction of the supreme court of the state is defined in section 9 of article 5 of the constitution in almost the exact words of section 3816 of the Revised Statutes of Idaho. The men who formulated the constitution were familiar with the provisions of the statute. The supreme court of California (*Camron v. Kenfield,* 57 Cal. 550) says: "The new constitution was framed in view of the construction of the language used in the former constitution, unanimously concurred in by the members of the highest tri' .nal of the state; yet the framers of the present constitution repeated the words employed in the former. We are forced to the conclusion that they used these words in the sense which had been attributed to them by the supreme court." We may conclude with equal confidence that the framers of the constitution of Idaho, in defining the functions of the writ of prohibition, did so with a full knowledge of the character and functions of the writ, as the same were defined in the statutes of Idaho, then existing, and which had been in force in the territory of Idaho for fifteen years at least prior to the adoption of the constitution. While it is true there had been no consideration of the question by the supreme court of the territory, we think it may reasonably be presumed that the members of the constitutional convention were as well advised as to the general legislation of the territory as they were to the decisions of its supreme court. The constitution expressly continues in force all laws of the territory which are not repugnant to the constitution. It will hardly be contended, we apprehend, that the provisions of sections 4994 and 4995 are repugnant to the constitution. As the law defining the functions of the writ of prohibition preceded the constitution by some

fifteen years, and such law was continued in force by express provision of the constitution, we are, as expressed by the supreme court of California, "forced to the conclusion" that, in providing for the issuance of the writ of prohibition in section 9 of article 5 of the constitution, they intended the writ then existing under the laws of the territory, and with the functions therein declared and defined.

Accepting the statements in the complaint as true, which we must do in considering the demurrer, it is clear that the defendant is about to do an act beyond his jurisdiction. The plaintiff has no plain, speedy, and adequate remedy in the ordinary course of law, and this is one of the contingencies provided for in the statute when the writ of prohibition will lie. The recognition of the rule, *"Prior tempore, prior jure,"* contended for by counsel for defendant, would not only open the door to fraud, but would operate as a negation of all the rights of parties and electors, which, it is conceded, it is the intent and purpose of the law to protect. The statute, by its language, clearly intended that the writ of prohibition should extend to ministerial acts; otherwise, the language used in sections 4994 and 4995 would not have been employed; and, in continuing these sections of the statute in force, it seems plain to us that it was intended to recognize the definition of the writ and its functions as set forth in said sections.

For the foregoing reasons, the demurrer to the petition for a writ of mandate is overruled, the demurrer to the petition for a writ of prohibition is overruled, and the motions to quash the alternative writs, in each case, are denied. The defendants answered both of the said petitions. The parties then filed a statement of agreed facts, and both of these proceedings are now before us for consideration upon the merits. By the stipulation of facts, all of the details leading up to the holding and conduct of each of the two conventions that made the certificates of nominations in question here are set forth fully. We will simply enumerate those facts only which in our opinion are necessary to a determination of the controversy.

The state nominating convention of the People's Party in the state of Idaho, which was held at Boise City in August, 1896,

elected and created a state central committee of said party, which thereupon organized and elected P. H. Blake, one of the committee, chairman, and said Blake appointed M. H. Jacobs secretary of said committee; and said state central committee selected an executive committee from said state central committeemen consisting of four, of which said chairman, P. H. Blake, was one.   On February 22, 1898, said Blake, as chairman of said state central committee, issued a call for a meeting of said committee, in pursuance to which call a meeting of said committee was held at Boise, on March 22, 1898, at which meeting eleven of the twenty members of the committee (the same being a majority) were present in person or by proxy.   Said committee consisted of one member from twenty counties in the state; one county, Oneida, not being represented on the committee. At said meeting, the committee fixed the time and place for holding the state nominating convention, at Moscow, on August 8, 1898, and instructed P. H. Blake, as chairman, to issue a call for a state nominating convention of the People's Party to be held at said time and place, which call was issued by said P. H. Blake as chairman, and which call was duly published.   On the twenty-fifth day of Jnue, 1898, the said P. H. Blake, chairman of said committee, requested, by writing, that said M. H. Jacobs resign his position as secretary, and turn over the keys of the said chairman's office, with the books and records of the party and committees, to one Frank Walton, July 4, 1898.   Said Jacobs refused to comply with said request, and, as secretary of said committee, issued a call for a meeting to be held at Boise City on the sixteenth day of July, 1898, at which time and place eighteen members of said committee met, either in person or by proxy, and there and then passed a resolution changing the time and place for holding the state nominating convention of the People's Party from Moscow to Boise, and from August 8 to August 24, 1898, the vote standing eleven for the resolution and seven against.   At said last committee meeting, said committee removed the said P. H. Blake by a majority vote, and selected one W. H. Taylor, who was not a member of said committee, but present and acting as proxy for a member of the committee, chairman of the said committee.   Pursuant to the resolution

changing the time and place for holding said state nominating convention, a call, giving due notice thereof, was issued by the said W. H. Taylor as chairman, and the said M. H. Jacobs as secretary, and duly published. Afterward and on July 4, 1898, P. H. Blake, who, notwithstanding the action of said committee in removing him, still claimed to be chairman of said state central committee, issued a paper, the heading to which is in the following words: "Proclamation to Populists. The Moscow Convention Called Off and Delegates Ordered to Meet in Boise, August 24." But, notwithstanding this proclamation, fourteen delegates from three counties met at Moscow on the eighth day of August, 1898, and effected a temporary organization, by the election of said P. H. Blake as temporary chairman, and Clay McNamee as secretary. The said convention or meeting then adjourned to meet at Boise, August 24, 1898, without attempting to perfect a permanent organization, giving as a reason therefor that no quorum was present. A minority of the state central committee, consisting of seven, including the proxy of said P. H. Blake, who voted against changing the time and place for holding the state nominating convention, and who voted against deposing said Blake as chairman of said committee, repudiated the action of said committee, refused to recognize the call for the convention to be held at Boise, August 24th, signed by W. H. Taylor as chairman, and insisted that the first call, or the one signed by P. H. Blake as chairman, was the regular and legitimate call for the state nominating convention of the People's Party. The reason given by said committee for deposing P. H. Blake as chairman, as shown by the resolution, was that he was not accessible to the said committee for the transaction of necessary business. The stipulation of facts show that said P. H. Blake had been absent from Boise City, where the office, books and records of said committee and of the said party were, from the seventeenth day of May, 1898, up to the sixteenth day of July, 1898. It is also agreed in the stipulation of facts that prior to the call for the state convention issued pursuant to the resolution passed by the state central committee as aforesaid, issued by said Taylor as chairman, sixty-five delegates from nine counties had been selected under the

Blake call for the convention to be held at Moscow, August 8, 1898.   August 24, 1898, delegates who had been selected in different counties from the ranks of the People's Party assembled at Boise City, some of them selected or claiming to have been selected under the call signed by P. H. Blake, and others claiming to have been selected under the call signed by W. H. Taylor. Those claiming to have been selected under the Blake call met in the building known as G. A. R. Hall, and proceeded to effect an organization by electing George F. Moore, temporary chairman, and Augustine M. Sinnot temporary secretary, which temporary organization was afterward made permanent.   Those claiming to have been selected under the call signed by W. H. Taylor met at McCarty Hall, in Boise, on August 24, 1898, and organized by selecting Joseph F. Bonham temporary chairman, and Daniel H. Kerfoot temporary secretary, and thereafter effected a permanent organization of said convention by the election of Presly M. Bruner as chairman, and Arthur H. Wilkie and Henry A. Griffiths as secretaries; there being present at this convention, either in person or by proxy, seventy-three delegates from thirteen counties in the state, claiming to represent the People's Party of the state of Idaho.   Each of these two conventions remained in session from August 24th to the 27th, inclusive.   Each nominated a state ticket, the nominations being certified by the respective chairman and secretaries, such certificates of nominations being those in question here.   During the sitting of these conventions, twenty-two of the seventy-three delegates in what is called the "Taylor Convention" seceded, and went over and participated in what is called the "Blake Convention."   The ticket nominated by what is called the "Blake Convention" was filed by the defendant Secretary of · State, who threatens to certify the nominations therein made to the various county auditors of the state.   The ticket nominated by what is called the "Taylor Convention" was duly certified and presented by one of the secretaries of said convention for filing and certification to the county auditors; but the defendant, as said secretary, fails and refuses to file said certificate, and further fails and refuses to certify the nominations therein made to the several county auditors of the state, as required

by law. Both of said certificates of nomination are regular on their face, and in form comply with the requirements of our election statute, and both of said certificates purport to have been made by a convention of the People's Party.

Many of the questions presented by the record relate to the government of political parties, and are to be controlled by such a party, either through meetings of the people composing the party, through conventions composed of delegates selected by the party, or through committees selected by such meetings or conventions, in the absence of statutory provisions relating thereto, and not by rule adopted by courts. This court feels unauthorized to prescribe the rules to be followed by the committees of the different political parties in the state regulating the conduct of such committees in calling state nominating conventions; and we must assuredly feel unauthorized to say whether such committees shall be presided over by a chairman selected from the committee or not, or to say whether the secretary of such committee has authority to call a meeting of such committee or not; and we deem it unnecessary to decide whether M. H. Jacobs was, or was not, secretary of the state central committee of the People's Party of the state of Idaho on the sixteenth day of August, 1898.

What is known as the "Australian Ballot System" has been adopted in this state, but in many respects our election statutes are crude and imperfect. The primary object of this system is to protect the voter from coercion, oppression, fraud and deceit, and to permit him in the privacy of his voting booth to exercise his own judgment, untrammeled by the will or dictation of others, and to vote for those party tickets, or for those individual candidates on various tickets, as he may deem consonant with his country's good, and in line with his duty as a good citizen. In furtherance of this beneficent object, our election statutes, taken as a whole, and construed together, clearly intend that each organized political party in the state may be represented upon the official ballot by having under its party name one ticket for the various officers to be selected at any given election, but that no political party should have more than one such ticket on the official ballot under its party name. Further

than this, it is provided by statute that any primary meeting or convention representing a political principle, as distinguished from a political party which represents a general policy embracing numerous political principles, may be nominated by a primary meeting or convention, or by petition setting forth the names, occupation, and residence of the various candidates, and designating in not more than five words the principle represented by such primary meeting, convention or petition. It will thus be seen that it is the intention of the law to give to each individual voter the opportunity of voting for any ticket presented by a political party, or presented by electors representing not a political party, but some political principle. The law then provides for party tickets, and for independent tickets representing some distinctive principle. The latter class of tickets is not involved in this controversy. This controversy is over two tickets, each of which claims to represent the same political party. It does not require much consideration, or the exercise of anything other than common sense, to reach the inevitable conclusion that a political party cannot exist without organization. It is a matter of general knowledge that all political parties have their organizations, usually, as in this state, headed by a state central committee, selected by the preceding state convention of the party. As between the two tickets in controversy here, one of them represents the organization of the People's Party, and the other does not. It is our duty to determine from the record before us which one of the tickets in controversy was nominated by a convention called by the state central committee of the People's Party for the state of Idaho.

A careful consideration of the facts presented in this record convinces us that the ticket in which the name of the plaintiff appears as a candidate for lieutenant governor, nominated by the convention presided over by Presly M. Bruner as chairman, is the convention which is entitled to recognition as the convention of the organized People's Party of the state of Idaho. It met pursuant to the call of the state central committee of the People's Party. It was called to order by acting chairman W. H. Taylor, of said state central committee. It was recognized by a majority of said committee. Whether said Taylor

was chairman *de jure* or *de facto* is unnecessary for us to determine. It is sufficient to say that said committee recognized him as its chairman, and he acted as such. It is self-evident that, the organized People's Party of the state having reposed in its state central committee authority to fix a time and place for the holding of a state nominating convention, such committee would necessarily be invested with the power to change such time and place; otherwise if the committee has acted injudiciously, and has fixed a time and place which would be detrimental to the best interests of the party, it would be powerless to change such time and place. In the case at bar, the committee which fixed Moscow and August 8, 1898, as the time and place for holding the state nominating convention, determined that it would be to the best interests of the People's Party to change the time and place of holding the convention to Boise, and on August 24th; and such committee made such change twenty-five days before the Moscow convention was to have been held, and thirty-nine days before the state nominating convention was held, due notice of which time was given by the acting chairman and secretary of the state central committee. The minority of the committee, including P. H. Blake and their followers, who rebelled against the action of the state central committee, and who held a separate convention, must be regarded as bolters from the regular People's Party convention. That the convention presided over by George F. Moore had the right to nominate a ticket which would be entitled to a place on the official ballot is unquestioned and undisputed, but that it could nominate a ticket represented by the organized People's Party of this state, which would be entitled to a place upon the official ballot, to the exclusion of the ticket nominated by the convention held under the call of the state central committee, and recognized by such committee, is not only questioned, but does not exist. If there can be two tickets under the name of any political party in this state, then there can be two hundred under the same name, or as many as there may be factions in any given political party. In a state like this, covering a large area, whose population is being increased from year to year by immigration, it is necessarily true that many voters are acquainted with the

individual candidates upon the various tickets. Such voters would be denied that protection against deception contemplated by our election laws if numerous tickets on their face claiming to represent the same political party are placed upon the official ballot. The ticket nominated by the Blake convention should select some name or designate some principle which would distinguish it from the ticket nominated by the People's Party convention. In the form in which it is presented, the ticket nominated by what is called the "Blake Convention" is not entitled to a place upon the official ballot. The Secretary of State has no authority to certify the nominations therein contained to the several county auditors of the state, but it is his duty to file the certificate of nomination made by the convention presided over by Presly M. Bruner, as chairman, and to certify the same to the several county auditors of the state, as required by the statute in such cases made and provided.

A peremptory writ of mandate directing and requiring the defendant, George J. Lewis, as Secretary of State, to file the certificate of nomination made by the convention presided over by Presly M. Bruner, as chairman, and described in the petition for a writ of mandate, and requiring said defendant, as Secretary of State, to certify the nominations shown to have been made in such certificate to the several county auditors of the state, must issue in the proceeding for a writ of mandate, and costs of such proceeding are awarded to the plaintiff. The peremptory writ of prohibition prohibiting the defendant, as Secretary of State, from certifying to the several county auditors of the state the nominations shown to have been made by the convention presided over by George F. Moore, by the certificate of nominations heretofore filed by said defendant, as Secretary of State, under the name of the People's Party, must issue. Costs of this proceeding is awarded to the plaintiff. Let judgment be entered in each of these proceedings accordingly.