sued to the state in the sum of $891.23, with interest from January 9, 1914.

---

STATE, ex rel. BYRNE, Plaintiff, v. EWERT, State Treasurer, Defendant.

(156 N. W. 90.)

(File No. 3863.   Opinion filed February 1, 1916.)

1. **Courts—Supreme Court, Original Jurisdiction of—Prohibition of Ministerial Act—Stare decisis—Statutory Construction, Rule of.**

It having apparently become quite generally accepted that it was the settled view of the Supreme Court that prohibition would lie to restrain ministerial acts, which view is justified by the erroneous assumptions of said Court, the Court will not follow the maxim of stare decisis, and assume to issue such writ for that purpose, in a case involving its original jurisdiction, which jurisdiction is only such as is given by the state Constitution and laws authorized thereby; since jurisdiction of this nature should rest on something stronger than said maxim; but will review the authorities and determine the nature and scope of the writ under the constitution and state statutes. And two purposes are properly to be considered, as revealed by the court decisions, in determining the law of the state; (1) Are there any constitutional provisions, decisions of other courts, federal statutes or federal decisions, controlling? (2) If not, what is the reasonable construction to be put upon the language used by the Legislature?

2. **Constitutional Law—Constitution Framers—View of Statues— Writ of Prohibition, Constitutional Nature of.**

Though the territorial court did not construe a certain statute, yet the framers of the state Constitution are presumed to have been advised as to the general legislation of the territory, and to have understood the effect of such statute to be in exact accord with a proper construction of its wording; and the principle that constitutions are drafted and adopted in the light of then established law of the territory or state, and that words used therein are to be given their statutory meaning, is recognized; therefore, when the constitution was adopted and certain courts were therein authorized to issue writs of prohibition, the writ contemplated was the writ then known to the statutes of the territory, which statutes were, by the enabling act, continued in force where not conflicting with the Constitution.

3. **Courts — Jurisdiction — Supreme   Court — Prohibition,   Original Writs—Extension of Writ to Non-judicial Proceedings.**

Under Const., Art. 5, Sec. 3, providing that Supreme Court

may issue writs of mandamus, etc., and other original and remedial writs, and hear and determine the same in such cases and under such regulations as may be prescribed by law, **held,** that, under the Constitution, even if the functions of said writ had not already been extended by territorial statute, such functions could, in writs issued by the supreme court, be extended by statute to matters not pertaining to its appellate jurisdiction, and to proceedings not judicial in nature.

4. **Prohibition—Statutory Writ, Scope of—Non-judicial Proceedings—Construction of Statute.**

By Code Civ. Proc., Sec. 777, declaring that the writ of prohibition is the counterpart of the writ of mandamus, and arrests the proceedings of any tribunal, corporation, board or person, when such proceedings are without or in excess of the jurisdiction of such tribunal, etc., the Legislature intended only that prohibition was the counterpart of mandamus in the nature of its functions, not that it was such counterpart in the matter of the scope of its functional power; and such writ should issue whenever the tribunal, etc., is actually proceeding, or about to proceed, in some matter under which it or he possesses no rightful jurisdiction; nor did the legislature intend by said statute to make a statutory declaration of the common law as it then existed; but it intended to take some forward steps by way of extending the scope of the writ; and, by using the word "jurisdiction," which means the legal power, right, or authority to hear and determine a case or cases, considered either in general or with reference to a particular matter, to have the power to inquire into facts and apply the law, the right to adjudicate concerning such matter in a given case, it was clearly intended to restrain the scope of such function to the restraining of proceedings of a judicial nature; in other words, to extend the scope over a field beyond such writ as known to the common law, and to the restraining of quasi judicial proceedings, but not to restrain merely ministerial acts.

Original application for writ of prohibition, by the State of South Dakota, on the relation of Frank M. Byrne, as Governor, against A. W. Ewert, as State Treasurer of the State of South Dakota. Upon motion to quash the alternative writ. Motion sustained, and the proceedings dismissed.

*C. C. Caldwell,* Attorney General, for Plaintiff.
*John Sutherland,* for Defendant.

(4) To point four of the opinion. Defendant cited: Chap. 34, Art. IV., Sec. 777-780 inclusive, Code Civ. Proc; Spelling Extr. R. Vol. 2, Secs. 1718-1722; See, also, note citing Maurer v. Mit-

chell, 53 Cal. 289; Thomson v. Tracy, 60 N. Y. 31; Spelling's Extraordinary Relief, Vol. 2, secs. 1719-1722; Spelling's Extraordinary Relief, Vol. 2, Sec. 1722; See, Ex parte Easton, 95 U. S. 77; State ex rel. Charinarow v. Hogan, 51 L. R. A. 958.

WHITING, J.    The Constitution of this state provides for the creation of a permanent fund, the interest from which shall be used for the support of the public schools of the state.   This fund is derived from the sale of certain lands given to this state for school purposes by the federal government, and from certain other sources named in the Constitution.   The principal of this fund is known as the "Permanent School Fund," and the state, by the Constitution, has pledged that it will retain such principal inviolate. The interest received from the permanent school fund, as well as the income received from the rentals of unsold "school lands," creates the fund that is to be actually expended for school purposes, and this fund is known as the "Interest and Income Fund." These two funds are among the funds in the care and custody of defendant as state treasurer.   The Constitution provides how the permanent school fund shall be invested in order that it may earn the money to help create the interest and income fund.   The Constitution has no provision authorizing the deposit, upon interest or otherwise, in banks or other depositaries, of any moneys belonging to either of these special funds.   Chapter 234, Laws of 1911, requires defendant to deposit, in depositary banks, all moneys in his possession as state treasurer; the moneys so deposited to draw interest.   Section 18 of said act provides that:

"The total interest paid by all depositaries shall be added to and be made a part of the general fund of the state."

In strict compliance with this section, defendant has placed in the "general fund" all moneys received as interest on funds deposited in the several depositaries.   A considerable portion of the money in defendant's hands and by him so deposited consists, at all times, of funds belonging to the permanent school fund and to the interest and income fund.

Contending that all interest derived from either of these funds through their deposit under the above-mentioned statute becomes, under the Constitution of this state, a part of the said interest and income fund to the use of which, for school purposes only, the state has made a binding compact, and that therefore said section 18,

supra, is invalid so far as it relates to moneys derived from these special funds, relator, as the Governor of this state, instituted this proceeding to procure from this court a writ prohibiting defendant from placing, in the general fund, such portion of the interest received from moneys deposited in such depositaries, as represents the interest received on moneys belonging to the permanent school fund and the interest and income fund.    The importance to the state of the determination of this question is readily apparent.   If such interest belongs to the interest and income fund, and through being placed in the general fund, should be expended as a part of such general fund, serious financial consequences might result to the state.    Recognizing the importance of the question thus presented, we should have been glad to have determined the same, but we are met with a motion to quash the alternative writ issued herein and to dismiss this proceeding.    This motion is based upon the ground, among others, that defendant is a ministerial officer, and the act sought to be restrained purely ministerial in character. That defendant is a ministerial officer and the act sought to be restrained one purely ministerial in character must be conceded. If defendant's motion is well founded and this court is without jurisdiction to grant the relief prayed for, we cannot with propriety, at this time and in this proceeding, consider and determine the validity of said section 18, supra, as anything we would say thereon would be the merest dictum.

Applications have been made to this court, in original proceedings instituted in this court, for writs of prohibition to restrain the performance of acts purely ministerial or administrative in character.    But in some of such proceedings respondents did not question the jurisdiction of this court to issue such a writ. Consequently, in each of such cases, it was assumed that such jurisdiction was vested in this court, and such proceedings were determined and the writs refused or granted solely in accordance with our views upon whether the respondent had authority to do the act south to be restrained.    Such were the cases of State v Anderson, 33 S. D. 574, 146 N. W. 703, and St. Charles State Bank v. Wingfield, 155 N. W. 776.   In State v. Blegen, 26 S. D. 106, 128 N. W. 488, and State v. Polley, 34 S. D. 565, 138 N. W. 300, 42 L. R. A. (N. S.) 788, both original proceedings in this

40—Vol. 36, S. D.

court and proceedings wherein ministerial acts were sought to be restrain, the question of the jurisdiction of this court to restrain such acts by means of writs of prohibition was raised; but without passing upon or referring to such question we denied the writs upon other grounds, thus apparently assuming that, if proper grounds did exist, we would have jurisdiction to issue the writ. The failure of respondents, in the Anderson and Wingfield cases, to raise the question now presented, and the assumption indulged in by this court in the Blegen case, was undoubtedly the direct, as it was the natural, result of the apparent assumption in the Polley case and an error of this court in State v. Axness, 31 S. D. 125, 139 N. W. 791.

In State v. Barber, 19 S. D. 1, 101 N. W. 1078, this court, upon appeal, sustained a writ of prohibition that had been issued to restrain an administrative board—a town board of trustees—from granting licenses to sell intoxicating liquors at retail.   No valid election had been held authorizing the sale of intoxicating liquors in such town during the year for which licenses were sought.  The town board was taking steps looking to the granting of such licenses.   The passing upon the petitions for license—which required the determination of their sufficiency and the fitness of the several applicants—was, while the act of an administrative board, yet an act quasi judicial in character.   The question presented to both this and the circuit court in that case was whether intoxicating liquors could be lawfully sold where no election had been held whereat the electors authorized such sale during the particular year during which the applicants desired to be licensed.   This court held that, under such circumstances, intoxicating liquors could not be lawfully sold, and that the writ had been properly granted.   Of course, if liquors could not be lawfully sold during the time specified in the applications for license, it followed that the board was without any jurisdiction to consider such applications.   What classes of proceedings could be, and what classes could not be, restrained by writs of prohibition was in no manner discussed in this court's opinion.   It will be seen that this court, in that case, went no further than to hold that prohibition would lie to restrain the quasi judicial proceedings of an administrative board when such proceedings chance to be beyond the existing jurisdiction of such board.   The decision in the Barber case was

followed in State v. Toomey, 27 S. D. 37, 129 N. W. 563, Ann. Cas. 1913D, 324, where the question was raised as to whether prohibition was a proper remedy. The decisions in these cases were clearly right.

In the Axness case, a proceeding instituted in circuit court and brought before this court by appeal, it was sought to restrain an act purely ministerial in character, and the authority of the circuit court to issue a writ of prohibition having such a function was directly raised. The trial court granted the writ asked for. This court, instead of silently assuming, as it had in the Blegen case, that the writ could properly issue in a proper case, clearly assumed that such had been the holding in the Barber case, and disposed of this question now before us by stating:

"The law is well settled in this state that, under our statutes, prohibition will lie, in a proper case, to restrain the action of an administrative board."

While the above statement was technically correct, it did not disclose that it was in relation to quasi judicial proceedings that the law was well settled by the Barber case. Such statement was, therefore, through its incompleteness, more misleading than the silent assumption indulged in the Blegen case. It so happens that the result reached in both the Blegen and Axness cases was the same as would have been reached even if the court had not indulged in any unwarranted assumptions and had fully considered and determined the question then, as now, presented.

[1] It having apparently become quite generally accepted that it was the settled view of this court that prohibition would lie to restrain ministerial acts, which view is justified by the erroneous assumptions of this court, we might feel warranted in following the maxim, "Stare decisis, et non quieta movere," and overrule defendant's motion, if this were not a question of the original jurisdiction of a court which court has only such original jurisdiction as is given it by the state Constitution and laws authorized thereby. Jurisdiction of the nature involved herein should rest on something stronger than the above maxim, we therefore think it highly proper, and we welcome this opportunity, to review the authorities and to determine the nature and scope of the functions possessed by the writ of prohibition under the Constitution and statutes of this state.

Section 777, C. C. P., provides:

"The writ of prohibition is the counterpart of the writ of mandamus. It arrests the proceedings of any tribunal, corporation, board or person, when such proceedings are without or in excess of the jurisdiction of such tribunal, corporation, board or person."

This section seems to have had its origin in California, where it was adopted into the Code in 1872 (section 1102). In the case of Maurer v. Mitchell, 53 Cal. 289, decided in 1878, that court said:

"Giving the words of the last clause of the section their natural construction in view of the law when the section was adopted, there would be no difficulty in holding that the 'corporation, board or person' mentioned, was a corporation, board, or person clothed with limited judicial powers which had been exceeded. The word 'jurisdiction,' when used in connection with 'prohibition,' would be at once understood as being employed in the sense of the legal power or authority 'to hear and determine causes.' "

In the year 1881 the Legislature of California, evidently with the intent to make it plain that it wished to extend the function of the writ of prohibition, amended the statute by inserting after the word "person," where such word first appears therein, the words, "whether exercising functions judicial or ministerial." (St. 1881, p. 20). This statute, as so amended, came before the Supreme Court of that state for consideration in Camron v. Kenfield, 57 Cal. 550. The court then held that what was said by it in Maurer v. Mitchell, in respect to the meaning of their Constitution, was not dictum. In the Maurer case it had said:

"By the fourth section of the sixth article of the Constitution of the state, the Supreme Court has power to issue writs of prohibition. We are all of opinion that the writ mentioned in the Constitution is the writ of prohibition as known to the common law."

Basing its decision upon the above statement in the former case, the court, in the Camron case, held that it was not within the legislative power to extent the function of the writ of prohibiton beyond that of the common-law writ. The territory of Montana adopted this same statute in 1887, and, after statehood, amended it to read as it was in California after its amendment there. There-

after, in the year 1899, it was held by the Supreme Court of Montana, in the case of State v. District Court, 22 Mont, 220, 56 Pac. 219:

"It is designated by the statute as 'the counterpart of the writ of mandamus,' but this provision of the Code, considered with the clause which says the writ arrests the proceedings of an inferior tribunal when such proceedings are without, or in excess of, jurisdiction, does not enlarge the class of cases in which the writ could have been resorted to before the statute. 'Counterpart' of mandamus is held not to be the exact reverse or opposite, inasmuch as the limitation of the second clause of the statute, confining the office of the writ to specific uses, shows that the word was used in a sense designed to illustrate the operation of the writ, and not to 'add to the class of cases in which it may be resorted to.' "

In this case no attention seems to have been paid to the provisions of the constitution. The same court, in State v. Hogan, 24 Mont. 379, 62 Pac. 493, 51 L. R. A. 958, approved of the decisions in State v. District Court, supra, and Maurer v. Mitchell, supra, and expressly disapproved that in Williams v. Lewis, 6 Idaho, 184, 54 Pac. 619. But in the Hogan case, as well as in the two California cases above mentioned, the court held that there was a lack of power in the Legislature to extend the functions of the writ of prohibition as such writ was known to the common law. The court, in the Hogan case, conceded the power of the Legislature to extend the functions of the writ of prohibition where the power to issue the writ was not granted by the Constitution, and its functions thus restricted to those known at the common law. In Idaho, with a statute having the same provisions as our section 777, the court, in Williams v. Lewis, supra, disapproved of the California decisions, and, after calling attention to the fact that their statute was adopted prior to statehood and at a time when, under section 1851, Revised Statutes United States (U. S. Comp. St. 1913, § 3438), the legislative power of the territories extended to all rightful subjects of legislation not inconsistent with the Constitution and laws of the United States, said:

"The defining of the functions of the writ of prohibition was a rightful subject of legislation. * * * The men who formu-

lated the Constitution were familiar with the provisions of the statute. The Supreme Court of California (Camron v. Kenfield, 57 Cal. 550) say: 'The new Constitution was framed in view of the construction of the language used in the former Constitution, unanimously concurred in by the members of the highest tribunal of the state, yet the framers of the present Constitution repeated the words employed in the former. We are forced to the conclusion that they used these words in the sense which had been attributed to them by the Supreme Court.' We may conclude with equal confidence that the framers of the Constitution of Idaho, in defining the functions of the writ of prohibition, did so with a full knowledge of the character and functions of the writ, as the same were defined in the statutes of Idaho then existing, and which had been in force in the territory of Idaho for fifteen years at least prior to the adoption of the Constitution. While it is true there had been no consideration of the question by the Supreme Court of the territory, we think it may reasonably be presumed that the members of the constitutional convention were as well advised as to the general legislation of the territory as they were to the decisions of its Supreme Court. The Constitution expressly continues in force all laws of the territory which are not repugnant to the Constitution. It will hardly be contended, we apprehend, that the provisions of sections 4994 and 4995 are repugnant to the Constitution. As the law defining the functions of the writ of prohibition preceded the Constitution by some fifteen years, and such law was continued in force by express provision of the Constitution, we are, as expressed by the Supreme Court of California, 'forced to the conclusion' that, in providing for the issuance of the writ of prohibition in section 9 of article 5 of the Constitution, they intended the writ then existing under the laws of the territory, and with the functions therein declared and defined."

The Supreme Court of Washington, in Winsor v. Bridges, 24 Wash. 540, 64 Pac. 780, in construing a statute identical with our section 777, supra, quoted the above from Williams v. Lewis, supra, and stated: "We think the reasoning of the Supreme Court of Idaho sound." This court, however, held that it could not issue a writ with greater functions than the common-law writ, because their section was not adopted until after statehood; and,

at the time of the adoption of the state Constitution, the territorial law in force provided only for a writ having common-law functions; the court held that, when the Constitution gave to the Supreme Court jurisdiction to issue the writ, it was the common-law writ that was intended, and the Legislature could not add to the functions of the writ issued by such court. The Washington court, like that of Montana, recognized that the functions of the writ might be increased by statute whenever the power of the particular court, which is to issue the writ, is not limited by the provisions of the Constitution, and concluded that jurisdiction to issue the particular writ asked for in that case—a writ restraining ministerial acts—was in the superior court. Inasmuch as this was an original proceeding in that court, and not an appeal from the superior court, it is apparent that all reference to the jurisdiction of the superior court was mere dictum. Also, in view of the fact that the writ was denied because of the constitutional restrictions upon the power of the court in which such proceedings were inaugurated, it was dictum for that court to state, as it did, that:

"This statutory writ of prohibition is broader in its purposes than the writ of prohibition at common law, and by it the proceedings of any tribunal, corporation, board, or person, whether they are acting in a judicial, legislative, executive, or administrative capacity, may be arrested, if acting in excess of their power."

The Supreme Court of Idaho, in Stein v. Morrison, 9 Idaho, 426, 75 Pac. 246, with an entire change in the personnel of the court, reversed the decision in Williams v. Lewis, supra. The court asserted that its former words were but dictum; because the action sought to be restrained in the former proceedings was quasi judicial—the determination of "which of two tickets was the ticket nominated by the real, genuine, accepted 'People's Party.'" The court referred with approval to the holding in Maurer v. Mitchell, supra, that the statute was but a mere declaration of the common law. It criticized that part of the opinion in Williams v. Lewis, supra, wherein it was held that, in adopting their constitution, the word "prohibition" was used in the sense it had been and was then used in the territorial statutes. It called attention to the fact that the federal courts, at the time of the adoption of their Constitution, recognized the writ of prohibition as it was known at common law, and then made the following statement:

"Now, the question arises: With the federal courts using the writ in its common-law sense and the Supreme Court of California holding that the word 'prohibition,' as used in the Constitution and statutes of California, had been used in the common-law sense, in what sense shall we conclude that the framers of the Idaho Constitution used the words 'prohibition' when incorporating the same into the organic law of this state? When a statutory or constitutional provision is adopted from another state, where the courts of that state have placed a construction upon the language of such statute or Constitution, it is to be presumed that it was taken in view of such judicial interpretation, and with the purpose of adopting the language as the same had been interpreted and construed by the courts of the state from which it was taken. We therefore arrive at the contrary conclusion from that reached in Williams v. Lewis, and are of the opinion that the writ of prohibition as authorized by the Constitution is the common-law writ, and that the same will not issue to restrain purely ministerial acts. The case of Williams v. Lewis is therefore expressly overruled in so far as it holds that the writ of prohibition will lie to restrain ministerial acts."

An analysis of these several decisions reveals that two propositions are properly to be considered in determining the law of a state: (1) Are there any constitutional provisions, decisions of other courts, federal statutes or federal decisions, controlling?( 2) If not, what is the reasonable construction to be put upon the language used by the Legislature? Our section 777 was adopted by the territorial Legislature in 1877, twelve years before the adoption of our Constitution and prior to the decision in Maurer v. Mitchell, supra. It is clear that there was nothing in the Organic Act under which the territory was organized, nor in any federal law, which would forbid the territorial Legislature from extending the functions of the writ of prohibition beyond the functions known to the common law. Our attention has not been called to any decision of the federal court construing such section.

[2] Our territorial court had never been called upon to construe this statute, but the framers of the Constitution must be presumed to have been advised "as to the general legislation of the territory," and to have understood the effect of such statute to be exactly in accord with a propert construction of its word-

ing. The principle that Constitutions are drafted and adopted in the light of the then established law of the territory or state, and that words used therein are to be given their statutory meaning, is fully recognized in all of the cases above referred to, and also in the following cases:   Peterson v. Dillon, 27 Wash. 78, 67 Pac. 397; State v. Seattle, 28 Wash. 488, 68 Pac. 946, 70 Pac. 114; Schmidt v. Schmidt, 47 Minn. 451, 50 N. W. 598; State v. Minn. etc., 40 Minn. 213, 41 N. W. 1020, 3 L. R. A. 510.   This court recognized this principle in State ex rel. v. Gardner, 3 S. D. 553, 54 N. W. 606.   It follows that, when our Constitution was adopted and certain courts were therein given the power to issue writs of prohibition, the writ of prohibition therein contemplated was the writ then known to the statutes of the territory, which statutes were, by the Enabling Act, continued in full force and effect where the same did not conflict with the Constitution.   Moreover, if, at the time of the adoption of our Constitution, we had not had among our statutes said section 777, but had adopted it subsequent to the adoption of our Constitution, we would not even then have to hold, as did the courts of California and Washington, that the Legislature could not enlarge, as to the appellate court, the writ of prohibition.   Their constitutions gave to such a court the power to issue all writs—including writs of prohibition—"necessary or proper to the complete exercise of its appellate jurisdiction."   It will readily be seen that this limited prohibition strictly to writs directed to inferior courts' and to writs restraining pure, but not quasi, judicial proceedings.

[3] But the Constitution of this state provides (section 3, art. 5) :

"The Supreme Court shall also have power to issue writs of * * * and other original and remedial writs [which would include prohibition], with authority to hear and determine the same in such cases and under such regulations as may be prescribed by law."

This last clause or any equivalent clause is not to be found in the Constitutions of the other states above referred to.   Under our Constitution, even if the functions of the writ had not already been extended by the territorial statute, the functions of the writ issued by this court could be, by statute, extended to matters

not pertaining to its appellate jurisdiction and to proceedings not judicial in nature.

[4, 5] We come then, untrammeled by constitutional or other restrictions, but seeking such light as we can get from the labors of others, to the consideration of the one question: Did the Legislature, in the enactment of section 777, intend to extend the functions of the writ of prohibition not only to the restraint of the quasi judicial proceedings of entities other than inferior courts —which of course is perfectly clear—but also to the restraint of proceedings not at all judicial in their nature? In Maurer v. Mitchell, supra, after discussing the construction that could properly be placed upon the last clause of section 777 if it stood alone—the words of such court in relation thereto being hereinbefore quoted by us—the court proceeds:

"It is said, however, that the first clause of the section can only be given effect by extending prohibition so as to arrest every unauthorized act of an officer or person clothed with authority, as mandamus may be employed to compel the performance of any act enjoined by law, with the condition in each case that the party has no other plain, speedy, and adequate remedy. But that prohibition, as a remedy is not in every respect the exact converse of mandamus, is made apparent by the words of the second clause of the same section, which declared that prohibition arrests proceedings which are without or in excess of the jurisdiction. In prohibition it must be shown to the court that the inferior court or person has exceeded the powers conferred by law, and the court intervenes to prevent further proceedings without or in excess of such power. Mandamus may be resorted to whenever an officer or person refuses to perform a duty enjoined by law, although the act may have been an isolated one disconnected with any proceedings leading up to that which the recalcitrant official or individual refused to perform.

"In what sense, then, is the word 'counterpart' employed in the first clause of the section? As it cannot be given the meaning of the exact reverse or opposite without doing away with the limitation contained in the second clause, whereby prohibition is confined to the cases in which the court, corporation, officer, or person has already exceeded the powers conferred by law, it must

have been used in the more general sense, that prohibition is the opposite, in that it arrests while mandamus commands action.

"The word 'counterpart,' as employed in the staute, is designed to illustrate the operation of the writ of prohibition when issued in a proper case, but it is not intended to enlarge or add to the class of cases in which it may be resorted to."

While we are of the opinion that all that was intended by the lawmakers of either state was to declare that prohibition was the counterpart of mandamus in the nature of its function, and that it was not intended to make it the counterpart of mandamus in the matter of the scope of its functional power, yet we cannot agree with the California court that prohibition does not lie until the lower court, tribunal, etc., has done some act in excess of or without its jurisdiction. We do not think the wording of section 777 requires any such construction to be placed thereon. We believe, in this respect, the words of our statute have not changed the rule announced in section 780 of the 1874 edition of High's Extraordinary Legal Remedies, and believe it should issue whenever the tribunal, corporation, board, or person "is actually proceeding, or about to proceed, in some matter over which it possesses no rightful jurisdiction." To show that the inferior court is about to proceed in some matter beyond its jurisdiction, one may set forth "any acts or declarations of the court or officer indicative of an intention to pursue such course." Spelling, Injunction and Other Extraordinary Remedies (2d Ed.) § 1750. Neither can we agree with the courts which hold that, by enacting this statute, the Legislature merely intended to make a statutory declaration of the common law as it then existed. We believe that by such statute our lawmakers intended to take some forward step, and to assist us in determining what such step was, resort may not only be had to the words used, but to the contemporaneous law relating to the writ in question. A reading of the 1874 edition of High's Extraordinary Legal Remedies reveals that there is to be found therein no suggestion that a writ of prihibition would reach the proceedings of anything but a court; there is not a suggestion that it would reach to and restrain proceedings of any corporation, board, or person, even though such proceedings were, in their nature, judicial. The same will be revealed by a reading of the 1875 edition of Wait's Practice, and an ex-

amination of the cases therein cited discloses that, up to that time, the court of New York restricted the writ to the restraining of inferior courts. In 1868 the Supreme Court of Minnesota, in Home Ins. Co. v. Flint, 13 Minn. 244 (Gil. 228), speaking through Justice Wilson, said:

"At common law it seems to be the office of a writ of prohibition to prevent courts from going beyond their jurisdiction. * * * It is seldom if ever granted to restrain the proceedings of other bodies or officers. But whether it is ever issued to another body or officer or not, it is clear that it is only issued to restrain the exercise of judicial powers. 2 Seldon's Prac. 308; 2 Burrill's Prac. 182; 3 Blackst. Com. 111, 113; People v. Supervisors, 1 Hill (N. Y.) 195; In matter of Mt. Morris Square, 2 Hill (N. Y.) 28; Ex parte Braudlacht, 2 Hill, 367 [38 Am. Dec. 593] Washington v. Phillips, 2 Metc. 298, 299."

It is clear that, in the absence of statutes, the right to issue writs of prohibition to restrain the quasi judicial acts of corporations, boards, or persons, was, at the best, very questionable at the time of the adoption of our statute. While we are of the opinion that the territorial Legislature intended to take a forward step and to extend the scope of the function of the writ of prohibition, we are convinced that, by the use of the word "jurisdiction," which, in law, Webster's New International Dictionary says is "the legal power, right, or authority to hear and determine a cause or causes, considered either in general or with reference to a particular matter," to have which Chief Justice Shaw in Hopkins v. Commonwealth, 44 Mass.(3 Metc.) 460, said was "to have power to inquire into the facts and apply the law," and which Bouvier says is "the right to adjudicate concerning the subject-matter in the given case," there was clearly evidenced an intent to restrict the scope of such function to the restraining of proceedings of a judicial nature; in other words, such section was enacted for the purpose of extending the scope over a field lying beyond such writ as it was known at common law, but into which such writ was beginning at that time to be pushed by statutes and by the judicial expansion of the common law—the restraining of quasi judicial proceedings. Conceding as we believe we must, that the further extension of the functions of such writ, so that, where no other adequate remedy exists, it might be used to restrain acts not

judicial in their nature, would be in furtherance of sound public policy, yet we must leave it to the lawmaking powers to make such extension.

The motion to quash is sustained, and the proceedings dismissed, without costs.