STATE ex rel. BOSTON & MONTANA CONSOL. C. & S. MINING CO. et al. v. SECOND JUDICIAL DISTRICT COURT et al., Respondents.

[No. 1343.]

[Submitted January 13, 1899.  Decided February 20, 1899.]

*Prohibition— Courts — Jurisdiction — Discretion — Presumptions:— Corporations—Rights of Shareholders—Receivers— Dissolution— Constitutional Law—Rules of Supreme Court —Briefs.*

1. Code of Civil Procedure, Section 1980, making a writ of prohibition "the counterpart of a writ of mandate," does not enlarge the class of cases in which the writ may be resorted to in view of the clause providing that the writ is to arrest the proceedings of any tribunal which are without, or in excess of, jurisdiction.

*Obiter.*—To find out whether a necessity exists for granting a writ of prohibition, a superior court is not precluded from ascertaining by all that appears upon the face of the proceedings, and in rare cases even by evidence *aliunde* the record, whether it is clearly apparent that the inferior court is about to exceed its jurisdiction.

2. On an application for a writ of prohibition to arrest the proceedings of a district court in a pending suit in equity, it will be presumed, in the absence of a showing to the contrary, that the court will not exceed the limitations of its jurisdiction, though it has no jurisdiction to grant a part of the relief asked for.

3. A shareholder of a corporation may procure the appointment of a receiver pending an investigation of charges of fraud and mismanagement against the trustees.

4. The appointment of a receiver of a corporation *pendente lite* does not necessarily mean its dissolution.

5. A district court is not ousted from jurisdiction to appoint a receiver in a pending suit by the fact that the judge does not like the attorney for one of the litigants, and is on friendly terms with the other, and has decided several cases against the former.

6. The Constitution giving the Supreme Court supervisory control over inferior courts does not authorize it to grant a writ of prohibition, prohibiting a district court from appointing a receiver of a corporation merely to avert probable injury to the applicants for the writ, in view of Constitution Article VIII, Section 2, vesting power in the Supreme Court under such limitations as may be provided by law, and Code of Civil Procedure, Section 1980, authorizing the issuance of a writ of prohibition to arrest proceedings in which the court is without jurisdiction.

7. Relators asked for a writ of prohibition to arrest proceedings wherein a stockholder of a corporation sued to have the corporation reinvested with property which it had transferred, and for the appointment of a receiver, and for the removal of the trustees. The question whether the court had jurisdiction to remove the trustees was not fully argued by relators, and not at all by defendant. *Held,* that the court would not be prohibited from removing the trustees, though its power to so act is very doubtful, where unusual harm was not apt to ensue if it was not so prohibited; the writ of prohibition being largely a discretionary one.

8. Counsel should conform their briefs to the requirements of the Rules of the Supreme Court.

APPLICATION for a writ of prohibition on the relation of the

Boston & Montana Consolidated Copper & Silver Mining Company and others against the District Court of Silver Bow County and others.    Denied.

Statement of the case by the Justice delivering the opinion.

The relators have applied by original proceedings in this Court for a writ of prohibition against the District Court of Silver Bow County and the Honorable William Clancy, judge thereof, and Burdett O'Connor, from taking any further proceedings in an action brought in said court by the defendant O'Connor against the relators, and from making or procuring to be made any order therein, or from taking any action on the order to show cause, granted therein, or from making any further or other application in said cause for the relief designated in said order to show cause therein, and for such further relief as this Court may see fit to grant, in the exercise of its general supervisory control over the aforesaid District Court and the Judge thereof.

Relators base their claim upon the facts set forth in an affidavit of John F. Forbis, Esq., an attorney and counselor for the Boston & Montana Consolidated Copper & Silver Mining Company, a corporation of Montana, and the Boston & Montana Consolidated Copper & Silver Mining Company, a corporation of the State of New York, A. S. Bigelow, L. Lewishon, Chas. Van Brunt, William J. Ladd, J. S. Bigelow and J. G. Ray, all of which relators are nonresidents of Montana, except the Boston & Montana Consolidated Copper & Silver Mining Company, which is a corporation organized under the laws of the Territory of Montana. Mr. Forbis sets forth in his affidavit what he appropriately terms ''a history of the litigation'' with respect to which the writ of prohibition is sought.    He swears that the Boston & Montana Consolidated Copper & Silver Mining Company, which we shall hereafter call the ''Montana Company,'' was organized and doing business all as is particularly stated in the statement of facts preceding the opinion of this Court recently rendered in the case of *Forrester & MacGinniss* v. *Bos-*

*ton & Montana Consol. Copper & Silver Mining Co.*, 21
Mont. 544, 55 Pac. 229.     This statement is referred to and
made part of the statement of the case under consideration.
Mr. Forbis' affidavit also recites the inconveniences occasioned
by the necessity of attending stockholders' and directors'
meetings in the State of Montana, inasmuch as a very large
majority of the stock is held in Boston, New York and other
eastern cities.     He then sets up the initiation of the proceed-
ings by which the directors and stockholders reincorporated
the Montana Company under the laws of New York; he re-
cites that counsel were consulted in relation to the power of
the Montana Company to transfer and dispose of all its prop-
erty to a foreign corporation under the Compiled Statutes of
1887 of Montana, and who advised the officers of the Montana
Company that such transfer could lawfully be made; then he
states the history of the transfer, which is succinctly set forth
in the statement of facts preceding the opinion in *Forrester &
MacGinniss* v. *Boston & Montana Consol. Copper & Silver
Mining Co.*, *supra.*     The affidavit further sets forth that
James Forrester, one of the plaintiffs in the suit just referred
to, commenced an action in the Superior Court of Massachu-
setts against the Montana Company to enjoin it from holding
the stockholders' meeting referred to in the statement in the
above mentioned case, but that the application was denied.
Mr. Forbis then sets up the institution of the suit by Forres-
ter and MacGinniss against the Montana Company and others,
last above referred to and to which we here advert.     He also
recites that the Montana Company and the Montana Ore Pur-
chasing Company have been engaged in a series of closely con-
tested lawsuits in the courts of the State of Montana and in
the United States Circuit Court for the District of Montana,
growing out of controversies between them as to the owner-
ship of veins of ore, water rights and other questions, many
of which actions are still pending; that the rivalry in business
between the companies is intense; that Forrester and MacGin-
niss acquired their stock through the Montana Ore Purchas-
ing Company, whose purpose is to harass and annoy the

Montana Company and its stockholders and to interfere with the successful operation of its business, and for no other purpose and motive whatsoever. The affidavit recites the decision of this Court, and the application for a rehearing and the decision thereon, which was made December 21, 1898. Mr. Forbis also refers to the answer which was interposed by the defendants in that action, wherein they set up the good faith of the conveyance and transfer from the Montana Company to the New York Company, and the willingness on the part of the defendants to abide by the final judgment that may be entered in that action and to reconvey and retransfer the property to the Montana Company, and to fully account therefor in case it be adjudged that the conveyance by the Montana Company to the New York Company was unlawful; but that the Supreme Court, in its opinion in that case, refrained from deciding whether or not the said Forrester and MacGinniss had the right to maintain this action in equity by reason of the bad faith and improper motives charged against them in the answer interposed in that action. It is further stated that a deed of reconveyance was ordered by the New York Company to the Montana Company on December 13, 1898, and that the said deed is in the possession of deponent Forbis, who stands ready and willing to produce it in court, and to deliver the same to this Court, or to any other in the State, pending the final decision in the case referred to.

It is next said that on December 15, 1898, without notice, Forrester and MacGinniss applied to the Honorable William Clancy, one of the judges of the District Court for Silver Bow County, for the appointment of a receiver for the Montana Company, and an order directing the New York Company to deliver possession of all its property to such receiver; that this application was granted, and one Thomas R. Hinds of Butte was appointed receiver, and the New York Company was directed to deliver to him all of its property, which was of a value of $40,000,000, as based upon the market value of the stock; that the undertaking on behalf of the plaintiffs in that suit was $5,000, and the amount of the receiver's bond was

fixed at $100,000; that Hinds is a man of limited responsibility, without experience in the management of mining properties, is identified with the Montana Ore Purchasing Company, and is a "partisan" of the said company as against the relators; that an application for a writ of review was made to the Supreme Court on December 17, 1898, which was granted, and an order was issued requiring the Judge of the District Court and Thomas R. Hinds to desist from further proceedings until the further order of the Supreme Court. It then appears that on December 30, 1898, Forrester transferred to one Burdett O'Connor 50 shares of the stock, and it is alleged in the affidavit that O'Connor is a representative of the Montana Ore Purchasing Company, and holds the stock in the interest of that company; and that on December 31, 1898, O'Connor brought an action against the Montana Company, the New York Company and the directors of the former; that his counsel was Charles R. Leonard, nominally, but that the action is prosecuted by the Montana Ore Purchasing Company and its attorneys; that Judge Clancy in that action issued an order to show cause why a receiver should not be appointed to take charge of the property of the Montana Company, and take possession thereof from the New York Company, and manage and control its business and affairs under the direction of the court, and why the persons acting as directors of the Montana Company should not be suspended in the exercise of their powers as directors, and removed. Deponent alleges that the charges of fraud and misappropriation of moneys contained in the complaint of O'Connor against the defendants are false and untrue; that the final judgment in the suit of Forrester and MacGinniss against the New York Company and others has never been rendered, and no proceedings have been taken therein towards the trial or determination thereof since the appeal to the Supreme Court. It is then alleged on information and belief that on December 10, 1898, F. A. Heinze, an officer of the Montana Ore Purchasing Company, stated that within a few days a receiver would be appointed for the Montana Company; and that the relations of said Heinze and

MacGinniss are friendly and intimate with the Honorable William Clancy, and that said Judge Clancy has a prejudice against the Montana Company and against deponent Forbis; that said judge has had before him a great many matters involving applications by the Montana Ore Purchasing Company for injunctions against the Montana Company, and has invariably granted the same to the fullest extent urged by the Montana Ore Purchasing Company and its agents.    Particular instances are then set forth by Mr. Forbis in his affidavit wherein Judge Clancy has enjoined the Montana Company from doing certain acts.    Deponent then says that on January 3, 1899, the relators herein applied to Judge Clancy, asking him to vacate the order to show cause in the case wherein O'Connor is plaintiff, on the ground that in said action he had no jurisdiction to grant the relief demanded; but Judge Clancy denied the application, and proposes to go on with the hearing, and, unless prohibited by this Court, he will grant the relief applied for by O'Connor.    The enormous scale of the mining operations of the New York Company is then set forth, and the injury that would ensue if the operation of the mines should be enjoined.    The affidavit further states that, if Hinds is appointed as receiver, it will practically put the entire property and business of the relators under the control and management of the Montana Ore Purchasing Company, and great wrong would be done; that there is no plain, speedy and adequate remedy at law, and that, unless this Court interferes, irreparable injury and damage will follow.    It is also charged that Judge Clancy is disqualified by reason of prejudice; that he has no jurisdiction, and that the relators are entitled to the writ prayed for.

The complaint of O'Connor against the Montana and New York Companies and others sets forth that the plaintiff is a stockholder, and alleges all essential matters in relation to the deed of conveyance referred to and described by this Court in the case of *Forrester & MacGinniss* v. *Boston & Montana Consolidated Copper and Silver Mining Co.*, heretofore referred to; that the conveyances by the Montana Com-

pany to the New York Company are void by reason of the decision of the Supreme Court in the case referred to; that neither he nor, the person who owned the stock which he now holds previous to his ownership ever consented to the execution and delivery of any deeds of conveyance by the defendant Montana Company to the New York Company, but that the individual defendants whom he sues, by conspiring together for the purpose of terminating and destroying the existence of the Montana Company, and putting its property in the possession of the New York Company, had obtained and hold the control over the majority of the stock of the Montana Company, and have entered into an agreement whereby the control and management of a large majority of the stock of the Montana Company is possessed by the defendants, and that it is their purpose to have the stock voted to continue themselves in office as trustees, and to carry out their schemes of depriving the Montana Company of all its property, and bringing about the termination of its existence; and that it is the purpose of the defendants to dispute the rights of the plaintiff O'Connor and other stockholders who have not assented to their conduct, and who will not assent to devesting the Montana Company of its property; that the defendants directors or trustees of the Montana Company have made no effort to procure the restitution of the property belonging to the Montana Company, and that no account of the dealings with the property has been made by the New York Company; that defendants refuse to make any effort to have the Montana Company reinvested with the possession of its property; that the New York Company has disposed of a large number of shares of its capital stock to various persons, and that it cannot make reconveyance of the property which it now holds belonging to the Montana Company which will be sufficient in law to fully reinvest the Montana Company with the title thereto without the consent of all the stockholders of the said New York Company, and that there is a large number of stockholders who will not consent thereto; that the directors of the Montana Company have

abdicated their positions, and have failed to perform any duties as trustees of the Montana Company, and that there is not any officer of the said company in the State of Montana; that the books of the company have been removed to the State of Massachusetts or the State of New York, and that there are no books of the company kept in the State of Montana, as required by law; that there is no means of examining or inspecting the record of said company in Montana; that the New York Company is in the possession of the property of the Montana Company, and has been engaged in mining and extracting large quantities of valuable ores from the property of the Montana Company, and has smelted and converted the same to its own use, and is now doing such acts, and that, unless the court appoints a receiver to take charge of the property and assets of the Montana Company, and issues an injunction against the New York Company enjoining it from further mining or using the property of the Montana Company, it will continue to mine and extract large quantities of valuable ores from the property of the Montana Company, and to operate its smelter, and remove the said ores from Montana to New York, and convert the proceeds of such ores to its own use, and unlawfully dispose of the same, and that the same will be entirely lost to the Montana Company, and to this plaintiff, and the stockholders who may join with him; that the plaintiff has no means of ascertaining the amount or value of the ores which the New York Company has heretofore extracted or will extract, and cannot ascertain the damage which will be done to the property of the Montana Company by the New York Company; that the said acts of the New York Company daily decrease the value of the Montana Company's mines and property, and constitute an irreparable injury and damage to the Montana Company and to this plaintiff; that the New York Company has no property or assets of its own, but is entirely insolvent, and without property or assets; that ever since the New York Company took possession of the Montana Company's property it has diverted the proceeds of the mining operations carried on by it, and has

delivered large amounts to persons not stockholders of the Montana Company, and has charged against said proceeds large sums of money as expenses; and that it will continue to dissipate the proceeds from the sale of the Montana Company's property unless a receiver is appointed; that the New York Company is a trespasser upon the rights of the Montana Company, and that the plaintiff is entitled to have the New York Company account for and pay over to the Montana Company and its stockholders the gross amount of all ores mined or extracted from the Montana Company's property; that the New York Company has converted to its own use valuable ores amounting to more than $5,000,000, and is removing the proceeds of said ores from Montana to New York, to the great damage of the plaintiff and other stockholders; that the directors and officers of the New York Company are using the proceeds acquired from the mining and reduction of the ores from the property of the Montana Company to purchase shares of the capital stock in the Montana Company to increase the price of the shares of stock on the Boston Exchange, and to make large profits to themselves therefrom, and to otherwise use the same for their own benefit; and that the directors of the Montana Company have full knowledge thereof, and are acquiescing therein; that the use of said proceeds is being made by said persons without any record being kept in the books of the New York or Montana Companies; and plaintiff alleges that the only means by which a reconveyance of the Montana Company's property can be secured to it, and an accounting had, is by the appointment of a receiver to act under the direction of the court; and that, unless such receiver is appointed, it will be impossible for the plaintiff and other stockholders in the Montana Company who do not assent to the conveyance mentioned to ascertain the amount or value of the ores which the New York Company has extracted from the mines of the Montana Company; and that it will altogether rest with the New York Company as to what, if any, property shall be returned to the Montana Company, or paid to its stockholders.    Plaintiff's complaint then alleges that the

directors of the Montana Company, by allowing all these acts to be done in the way of removing and converting the ores and in refusing to retransfer the property or to account, are not fit or proper persons to have charge of the Montana Company, and they should be removed, and other suitable persons appointed; and a receiver should be appointed who should act under the direction of the court during the pendency of this action, and that the New York Company should be enjoined from any further use of the property. O'Connor's prayer is for the appointment of a receiver with full power to take possession of the property of the Montana Company, and carry on and manage the business during the pendency of this action; that the New York Company be required to deliver the possession of all the property to the receiver, and to account to him for the use thereof while the same has been in its possession; that the New York Company be restrained from the further use of the property, or from mining the same; that the defendant directors or trustees be removed from their offices, and enjoined from doing any act as directors or trustees; that the deeds from the Montana Company to the New York Company heretofore given by the former to the latter be declared null and void, and the title of the Montana Company quieted against all claims of the New York Company; that upon the final hearing the Montana Company be dissolved, and all of its property sold by the receiver, and, after the payment of its debts and liabilities, that the proceeds be distributed to its stockholders, or, if dissolution be not decreed, that the court appoint trustees for the Montana Company, and, after the settlement of the affairs of the receivership, that all of its property and assets be delivered to said trustees for the Montana Company. Such other and further relief as may be just and proper was also prayed for by O'Connor.

The defentants moved the Supreme Court to set aside and dismiss the writ of prohibition, after this Court had issued a writ and an order to show cause. Dismissal of the writ was asked upon the ground that the Court had no jurisdiction to issue the same and because the petition, affidavit and record

upon which the writ was issued do not state facts sufficient to give this Court jurisdiction, or to show that the District Court or the Judge thereof was about to exceed its or his jurisdiction; that the plaintiffs have a plain, speedy and adequate remedy at law in case the receiver should be appointed; and that it does not appear that the District Court, unless prohibited, would appoint a receiver.

*John F. Forbis, Wm. H. De Witt* and *Louis Marshall* for Relators.

*Chas. R. Leonard* for Defendants.

**HUNT, J.** The statement of the case made in the brief of relators' counsel in this proceeding does not wholly conform to the rules of Court requiring the brief, among other matters, to contain "a concise abstract or statement of the case, presenting succinctly the questions involved and the manner in which they are raised, which abstract shall refer to the page numbers in the transcript in such manner that pleadings, evidence, orders and judgment may be easily found." By an abstract or statement of the case presenting succinctly the questions involved is meant a plain and fair statement from the record, free from argumentative recitals and deductions of counsel reflecting contemptuously upon the attitude, motives or ulterior purposes of the opposite side. No matter how acrimonious may be the litigation between parties themselves, nothing should be permitted to interfere with the presentation of a perfectly impartial statement in the briefs of counsel of all that is necessary and fit to enable the Supreme Court to approach the legal questions raised in full reliance upon the correctness and sufficiency of the statement furnished. Compliance with the rule in this respect materially lightens the labors of this Court, while it is worse than having no statement at all to be met with a brief that, instead of setting forth the real substance of the issues in the record, presents only one side fully and skims over those portions of the transcript which are essential to state the position of the

other.   The argument and the statement have separate posi-
tions assigned to them in the brief and we hope that in the
future counsel will be careful to observe the appropriate and
distinct office of each.

The foregoing suggestions become very pertinent in this
proceeding because of the omission on the part of rela-
tors' counsel to put before us in their brief the facts pleaded
by O'Connor in his complaint, as it is upon them that we are
constrained to hold that the District Court does not appear to
be acting, and about to act, in excess of its jurisdiction and
power in the premises, at least so far as the appointment of a
receiver *pendente lite* goes.

The writ of prohibition is to arrest the proceedings of any
tribunal when such proceedings are without or in excess of
the jurisdiction of such tribunal.   (Code of Civil Procedure,
Section 1980.)   It is a process by which our Court, or any
Superior Court, prevents a district court, or any inferior
tribunal, from exercising jurisdiction with which it has not
been vested by law.   (Spell. Extr. Rel., Section 1716.)
Negative in its manner of operation, its command is, "You
stop doing," while *mandamus* positively says, "You shall
do."   It is designated by the statute as "the counterpart of
the writ of *mandamus*," but this provision of the Code, con-
sidered with the clause which says the writ arrests the pro-
ceedings of an inferior tribunal when such proceedings are
without, or in excess of jurisdiction, does not enlarge the
class of cases in which the writ could have been resorted to
before the statute.   "Counterpart" of *mandamus* is held not
to be the *exact* reverse or opposite, inasmuch as the limitation
of the second clause of the statute, confining the office of the
writ to specific uses, shows that the word was used in a sense
designed to illustrate the operation of the writ, and not to
"add to the class of cases in which it may be resorted to."
(*Maurer* v. *Mitchell*, 53 Cal. 291.)   The character of the writ
is therefore not changed by the Code; nor can any question
be inquired into except that of jurisdiction in the proceeding
inaugurated by it.   It is preventive, rather than remedial,

and cannot take the place of an appeal. (*Thomson* v. *Tracy*, 60 N. Y. 31.)

Section 579 of the Code of Civil Procedure (Comp. St. 1887) defined the writ substantially as the new Code does, except that the present Code expressly authorizes the writ to issue to persons or boards exercising ministerial as well as judicial functions, while the former Code omitted express enumeration of those to whom it might issue. But the scope of the writ has not been changed. In *State* v. *Benton*, 12 Mont. 66, 29 Pac. 425, the court adopted the rule laid down by the Supreme Court of the United States in *Smith* v. *Whitney*, 116 U. S. 167, 6 Sup. Ct. 570, restricting the issuance of the writ to proceedings wherein it clearly appears that the inferior court is about to exceed its jurisdiction, and approves of the common doctrine that, unless it appears on the face of the proceedings that the court had no jurisdiction of any part of the subject matter of the complaint, prohibition will not lie. Cases may arise, however, where evidence *aliunde* the record is admissible to show no jurisdiction, as was held in *Bullard* v. *Thorpe*, 66 Vt. 599, 30 Atl. 36, cited by relators; but they are rare, and do not affect the general rule adopted in *State* v. *Benton, supra.* Moreover, the writ may issue in Vermont if "necessary to the furtherance of justice and the regular execution of the laws;" and, besides this, such evidence is allowed, and was permitted in the Vermont case, upon the principle that, where jurisdiction is positively excluded, no one shall be allowed to create a jurisdiction by voluntarily changing the real position of the parties into an assumed one. That would be a fraud. (*Hutson* v. *Lowry*, 2 Va. Cas. 42.) Thus, after all, the question resolves itself solely into an inquiry by which the jurisdiction may be determined. (*Bodley* v. *Archibald*, 33 W. Va. 229, 10 S. E. 392.)

To ascertain what is the power of the court involves inquiry into all that properly appears on the face of the proceedings. It may extend to the investigation of facts appearing as part of the proceedings in order that the court which

is asked to issue the writ may correctly say whether the whole proceedings upon their face show that the lower court had not enough before it to set in motion its power to do the act or acts it is doing and is about to do. It must be remembered, though, that the sufficiency of the cause of action as set out in the proceedings is to be tried in the inferior court, as are all questions of law, by regular procedure, and that, if there be error in the rulings thereon, remedies by appeal are prescribed; hence, ordinarily, prohibition will not lie; but, on the other hand, if upon the face of the proceedings there has been a radical departure from the authority vested in the court, and remedy by appeal is entirely inadequate to afford redress, the writ may go, even though jurisdiction of the nature of the action was in the inferior court. We do not hold, by any means, that if the facts alleged fail to state a cause of action, or if a cause of action is stated, yet the evidence fails to sustain the complaint, that there is ground for issuing a writ of prohibition; but we believe it may issue where the showing made discloses a wholly unwarranted assumption of power by the inferior court, and where appeal either does not lie at all or is wholly inadequate to afford redress. "It is quite clear," says Works on Jurisdiction (page 634), "that where the power to act with respect to the particular cause or matter in controversy is entirely wanting, and no discretion rests in the inferior tribunal with reference to the question whether it shall act or not, the writ is the proper remedy;" and in *Sweet* v. *Hulbert*, 51 Barb. 312, the Supreme Court of New York held that the writ would lie "to prevent the exercise of unauthorized power by an inferior tribunal in cases where it has jurisdiction as well as where it has not jurisdiction," following the decision in *Quimbo Appo* v. *People*, 20 N. Y. 531, where Judge Selden held that originally in England the writ was never governed by any narrow or technical rules, "but was resorted to as a convenient mode of exercising a wholesome control over inferior tribunals." The last case was affirmed in *People ex rel. Mayor* v. *Nichols*, 18 Hun. 530, and in *People ex rel. Cooper* v. *Special Terms*, 57 How. Prac. 467.

High, in Section 762 of his work on Extraordinary Legal Remedies, treats the writ of prohibition as a remedy afforded by the common law to correct encroachments of jurisdiction by inferior courts and says it is used to keep such courts within the limits and bounds prescribed for them by law. "The object of the writ being to restrain subordinate judicial tribunals of every kind from exceeding their jurisdiction, its use in all proper cases should be upheld and encouraged, since it is of vital importance to the due administration of justice that every tribunal vested with judicial functions should be confined strictly to the exercise of those powers with which it has been by law intrusted."

Extreme necessity should usually be apparent before this extraordinary remedy will be granted. (*State* v. *Judge of New Orleans Commercial Court*, 4 Rob. (La.) 48; *People ex rel. Adams* v. *Westbrook*, 89 N. Y. 152.) But, to find out whether such a necessity exists, it is not beyond the power of the Superior Court to ascertain if any evidence was before the inferior court upon which it assumed the power to act, to the end that it may say not whether the power was discreetly or wisely exercised, but to determine whether the power existed at all. We may illustrate in this way: Ordinarily, a receiver in an action before judgment therein cannot be appointed by a court without notice of the application for such an appointment to the adverse party, unless it shall appear to the court that there is immediate danger that the property or fund will be removed beyond the jurisdiction of the court, or lost or materially injured, destroyed or unlawfully disposed of. Suppose a plaintiff applies for a receiver in his action for equitable relief, gives no notice and relies upon the ground that there is the immediate danger mentioned in the statute; suppose, though, oral testimony is heard to support the averments of his complaint at an intermediate stage of the case and in support of his application for a receiver, but the proof offered fails entirely to show immediate or any danger; yet the lower court has gone ahead and has said that it does satisfactorily appear that immediate danger does exist, and is

about to act by the appointment of a receiver.    What then is
the position of the lower court?   It had jurisdiction of the
subject matter of the action and the nature thereof and of the
parties to it.    Furthermore, it had the power under the law,
apparently, to appoint a receiver *pendente lite* in such a suit,
under the averments of the complaint, but not under the evi-
dence.    Must the Superior Court decline, under such extra-
ordinary circumstances, to issue the writ of prohibition, be-
cause there was jurisdiction and apparent power in the lower
court?   To determine jurisdiction, will it not inquire whether
there was any evidence from which it appeared to the lower
court that immediate danger existed?    It cannot be that,
where there is no appeal from an order appointing a receiver
*pendente lite*, this Court will refuse to order the lower court
to desist from proceedings which are without any evidence to
support an exercise of power by that court in an appointment
of a receiver.    The indispensable prerequisite to the exist-
ence of the power to appoint is that it shall appear that there
is immediate danger.    If this does not appear, the condition
does not arise; it cannot arise where the power may be exer-
cised at all.    The Court has not put itself in a position where
it can act by appointing a receiver, hence it seems to us the
power to act is wanting, and action by appointment is in ex-
cess of the bounds prescribed by the court by law, and is
beyond its jurisdiction.    (*Gould* v. *Gapper*, 5 East 345).

Spelling on Extraordinary Relief (Section 1730) refers to
the California decisions in *Havemeyer* v. *Superior Court*, 84
Cal. 327, 24 Pac. 121, and *Bruner* v. *Superior Court*, 28 Pac.
341, as establishing a doctrine that the adequacy of the rem-
edy by appeal in any given case is an open question, and says:
"The doctrine is quite reasonable and in consonance with gen-
eral principles governing the employment of extraordinary
remedies; for if it is a general principle that if an ordinary
remedy, or such remedy as is available 'in the ordinary course
of law,' does not afford a party the specific relief to which he
is entitled, or does not meet the emergencies of his case, it is
no bar to injunction, mandamus or other remedies of an ex-

traordinary character; why, then, should such fruitless resort stand in the way of prohibition?'' This reasoning impresses us as sound, and reverts to the propositions- laid down by Seldon, J., in the leading case of *Quimbo Appo* v. *People*, *supra*, to the effect that the writ will issue where a court goes ''beyond its legitimate powers,'' even in a matter where such tribunal has jurisdiction. The English decisions are referred to by Judge Selden as proving ''that the writ lies to prevent the exercise of any unauthorized power in a cause or proceeding of which the subordinate tribunal has jurisdiction, no less than when the entire cause is without its jurisdiction.'' We are thus led back to the doctrine approved of in *State* v. *Benton*, *supra*, which does not preclude the Superior Court, within the limitations discussed, from ascertaining by all that appears upon the face of the proceedings whether it is clearly apparent that the inferior court is about to exceed its jurisdiction.

In the discussion of this point we have digressed from what is necessary to a decision herein. Our views may, therefore, be a subject for argument at some other time, but we have thought it none the less proper to indicate them now. They are not material in this case, because we need look no further than to the averments of O'Connor's complaint, which are to be taken as true upon this hearing. The substance of them is set forth in the statement preceding this opinion and we shall not take the space to recapitulate them. They show that O'Connor, as a shareholder in the Montana corporation, has been grievously wronged and the Montana corporation greatly injured by the illegal transfer of the property of that corporation to a foreign corporation. They show that he and other *bona fide* shareholders in the Montana Company never assented to any such transfer. They show that certain defendants whom he sues have conspired to continue themselves as directors of the corporation in order to carry out a scheme of depriving the Montana Company of its property and terminating its existence. They show that, notwithstanding this Court has decided that by the law of this State a domestic cor-

poration cannot exchange its property and stock for the stock of a foreign corporation without the consent of all its stockholders, the defendants have refused to reinvest the Montana Company with its own property illegally held by the New York corporation. They show that the Montana Company has no officer in Montana, and that the books of the Montana Company are in other states, and without the jurisdiction of the courts of this State. They show that the property of the Montana Company is largely in valuable mines, and that the proceeds from the sale of ores have been removed by the defendants and converted to their own use. They show that, unless injunction issues, and a receiver is appointed, the New York Company will continue to extract. ores and unlawfully dispose of the same, to the great detriment and injury of the Montana Company and its shareholders. They show that the New York Company is insolvent, and has dissipated large sums of money, and will continue to do so unless a receiver is appointed. They show that plaintiff is entitled to have an accounting by the New York Company to the Montana Company, and that already $5,000,000 worth of ore has been converted by defendants. They show that the directors of the New York corporation are using the proceeds of the sale of ores to speculate in the stock of the Montana Company to their own gain; and, finally, that, unless a receiver is appointed, it will be impossible to ascertain the amount or value of the ores already extracted, or to bring about a retransfer of the property belonging to the Montana Company. O'Connor's prayer is for a receiver to take charge *pending the litigation;* but he asks *that the New York Company be required* to deliver possession to the receiver, and account for the use of the property while it has been in its possession; that the directors be removed; that the deeds heretofore given by the Montana corporation be declared null and void; that the title of the Montana Company be quieted; and that upon final hearing the Montana corporation be dissolved, and its property sold, or, if dissolution be not decreed, that trustees be appointed for the Montana Company, and its affairs settled, and for general relief.

Relators err in assuming that the ultimate purpose of O'Connor's action is simply to bring about a dissolution of the Montana Company, and so to destroy it. It is upon this erroneous assumption they have formulated many of the propositions of law advanced in their brief. The action, though, seeks other and different relief as well. The expressions of the complaint do not allow us to confine its objects exclusively to the obtaining of a dissolution of the Montana Company. On the contrary, full equitable relief is asked, the principal feature of which is that the Montana Company be reinvested with the millions of dollars' worth of its property which has been illegally transferred by the trustees thereof to a foreign corporation of no solvency, and beyond the jurisdiction of our courts and the reach of the shareholders who dissent from the transfer by the Montana Company, and to secure an accounting for the vast sums of money claimed to be due to the Montana Company for ores sold since the time of the illegal transfer alleged. If in asking for a dissolution of the Montana corporation, or, in lieu thereof, for the appointment of trustees, he has asked more than the law will give him, it is nevertheless beyond our power to say in this proceeding that the District Court has no jurisdiction to proceed with his case, and to grant him such relief as he may be entitled to under his bill. No presumption is permissible which would sustain a holding that, where a plaintiff in an equity suit, showing himself entitled to a measure of relief, asks for more than the law should give him, the District Court having jurisdiction of the subject-matter of his bill will exceed its jurisdiction, and extend its relief beyond the limits of its power. In the absence of a very clear showing to the contrary, we are obliged to act upon the theory that the lower court will confine itself within its proper limits, and go no further than it legally may. The appointment of a receiver is asked as ancillary to the main suit, and *pendente lite* only. He is to take possession and manage the affairs of the corporation under the direction of the court while the charges made by O'Connor against the trustees of the Montana Company are being investigated upon

a trial.   As a shareholder, O'Connor has a right to ask this relief, and in doing so he has brought himself squarely within the doctrine of *State* v. *Second Judicial Dist. Court*, 15 Mont. 324, 39 Pac. 316, the reasoning of which we must approve, and here apply.   It does not necessarily follow that the appointment of a receiver *pendente lite* means the dissolution of the corporation, or its destruction.   (*Decker* v. *Gardner*, 124 N. Y. 334, 26 N. E. 814; Beach, Rec. Sec. 335.)   It means that the District Court, if it acts, will, in the best interests of all concerned, appoint some one, to be regarded as its officer, to take charge of the property in litigation; but the corporation's existence need not be destroyed.   The person to be appointed is, in law, an indifferent one, to be clothed with the power to receive and *preserve* the property and assets of the corporation and its shareholders for the benefit of whoever may finally be declared to be entitled to them.   The principle upon which the court may act is that, in order to secure the property—the subject-matter of the litigation—to its owners, the court itself, by an order appointing a receiver, may say that it is inequitable that any party to the litigation should have possession of the property of the Montana Company, and the issues and profits thereof, pending the litigation in which O'Connor, as a shareholder, asks equitable relief.

We cannot grant the writ upon the showing made of Judge Clancy's prejudice or enmity.   That argument must be dismissed as without any foundation of record.   The facts that Judge Clancy does not like Mr. Forbis, one of several counsel for relators, that he has decided various cases against relators, and is on friendly terms with the officers of the Montana Ore Purchasing Company, and may not select a fit person as receiver, if he appoints one, are far from sufficient to oust the lower court of jurisdiction.

It is also said that the Supreme Court, by virtue of its constitutional power to exercise general supervisory control over all inferior courts, has the power to grant these relators relief from the danger which they say surrounds them.   The power of this Court is not unlimited, but expressly authorized and

vested "under such regulations and limitations as may be provided by law." (Art. VIII, Sec. 2, of the Constitution of Montana.) In the matter of granting writs of prohibition there are statutory regulations and limitations, as discussed in the former part of this opinion. Therefore power to go outside of them does not exist.

If the lower court shall issue the injunction prayed for by O'Connor enjoining the individual defendants sued from exercising functions as trustees of the Montana Company, or enjoin the New York corporation in respect to the matters mentioned in the order to show cause, its action can be reviewed by appeal from such order; or if any action may be taken suspending the powers of the defendants as directors, or removing them from their positions as trustees of the Montana corporation, remedy may be sought by appropriate proceedings. The power of a court of equity to suspend or remove trustees of a corporation is a very doubtful one. Whether it exists, or to what extent it goes if it exists, has not been argued very fully by relators' counsel, and is not discussed at all by defendants. Under such conditions, considering the great importance of the question, we prefer to refrain from expressing an opinion upon it, particularly where no unusual harm is apt to ensue by not doing so at this time. The writ of prohibition being largely a discretionary one, we have concluded not to issue it to prohibit the court from acting in this respect. In the other respects hereinbefore discussed relators have not made a case to entitle them to its issuance.

*Writ denied, and petition dismissed.*

BRANTLY, C. J., and PIGOTT, J., concur.