FORRESTER & MacGINNISS, Plaintiffs; THOMAS R. HINDS, Respondent, *v.* BOSTON & MONTANA CONSOL. COPPER & SILVER MINING CO. et al., Appellants.

(No. 1,697.)

(Submitted October 20, 1903.  Decided March 31, 1904.)

*Receivers—Expenses—Fees — Excessive Allowances—Determination—Appeals.*

1.  No motion lies for a new trial of issues involved in the matter of a claim for compensation and expenses of a receivership, and there can be no appeal from an order denying such a motion.
2.  An appeal lies from a judgment allowing the compensation and expenses of a receiver.
3.  A receiver cannot be allowed fees for counsel to a superintendent in charge of the corporation's property, or for other employes.
4.  A defendant in a receivership should not have its property taken to pay expenses of a receiver unjustly and unlawfully kept in office as an officer of the court, where justice requires his discharge.
5.  Where a receiver was only in actual possession of the corporation's property for five days, and was free to act as receiver not more than fifteen days altogether, an allowance of $200, 000 was excessive.
6.  Acts of violence exhibited towards a receiver by the agents of the corporation do not justify an excessive allowance of fees to the receiver.

7.  Where a receiver should have been discharged on a certain date, when defendant corporation offered, in writing, to do the very things that plaintiff prayed the court to enforce, he was entitled to a reasonable compensation for services rendered prior to such date, and to be recompensed for proper and reasonable expenses incurred prior thereto, but was entitled to nothing for expenses or services rendered after that date, except, perhaps, a reasonable sum for services of a bookkeeper aiding in rendition of accounts to the court.

Mr. Justice Holloway dissenting.

*Appeal from District Court, Silver Bow County; William Clancy, Judge.*

Action by James Forrester and John MacGinniss against the Boston & Montana Consolidated Copper & Silver Mining Company and others. Thomas R. Hinds was appointed receiver for the property of the defendant corporation. From a judgment fixing the compensation of the said receiver, and from an order denying a motion for a new trial of the issues involved in the claim for such compensation, defendants appeal. Appeal from the order denying a new trial: Dismissed. Appeal from the judgment: Reversed.

*Messrs. Forbis & Evans,* for Appellant.

*Messrs. Pemberton & Maury, Mr. Robert B. Smith, Mr. J. E. Healy, Mr. John J. McHatton,* and *Mr. George F. Shelton,* for Respondent.

MR. JUSTICE MILBURN delivered the opinion of the court.

This is an appeal from an order of the district court (in the form of a judgment) allowing the receiver Thomas R. Hinds, $200,000 for compensation for his services, and $31,116.30 for expenses as such receiver, and from an order denying a motion for a new trial of the issues involved in the matter of the claim for such compensation and expenses.

Two motions to dismiss these appeals have been filed—one by the plaintiffs and one by the respondent, Thomas R. Hinds.

The appeal from the order denying the motion for a new trial is dismissed. There is no such appeal known, and no such motion lies. *State ex rel. Heinze* v. *District Court,* 28 Mont. 227, 72 Pac. 613.

The motions for dismissal of the appeal from the judgment fixing the compensation and expenses.must be, and are, denied. Under the authority of the case just above cited, appeal lies from a judgment fixing the compensation of a receiver. The notice of appeal shows clearly that an appeal was taken from the judgment fixing the compensation, and that an appeal was taken from the order denying the motion for the new trial asked for. There is not anything to show.that the bond on appeal was not sufficient and regular in form, and properly filed.

The history of this receivership would fill a volume of considerable size, and we shall not attempt to narrate it here. We merely refer for such history to *Forrester et al.* v. *Boston & Montana Consol. Copper & Silver Min. Co.* 21 Mont. 544, 55 Pac. 229, 353; *State ex rel. Boston & Montana Consol. Copper & Silver Min. Co.* v. *Second Judicial Dist. Ct.,* 22 Mont. 220, 56 Pac. 219; *Id.* 22 Mont. 241, 56 Pac. 281; *Id.,* 22 Mont. 376, 56 Pac. 687; *Forrester & MacGinniss* v. *Boston & Montana Consol. Copper & Silver Min. Co.,* 22 Mont. 430, 56 Pac. 868; *Id.,* 23 Mont. 122, 58 Pac. 40; *Id.,* 24 Mont. 148, 153, 60 Pac. 1088, 61 Pac. 309; and *Id.* 29 Mont. 397, 74 Pac. 1088.

The receiver was appointed December 15, 1898. On account of certain stays ordered by the supreme court in the numerous proceedings he was free to act as such receiver not exceeding fifteen days; that is to say, part of December 15, and part of December 16, 1898, and from the 1st of April to the 13th, inclusive, 1899. He was in actual possession of the property from April 8th to the 13th, inclusive, and no longer. On February 28th of the same year the defendants moved the district court to vacate the order appointing the receiver. As said in the opinion of this court in certain *mandamus* proceedings instituted to force the district court to take up, hear and determine

said motion (22 Mont., at page 443, 56 Pac. 868), the court's treatment of said motion and its delay in hearing and determining the same, were unjustifiable, unfair and oppressive. It is apparent that the court's delay in hearing and determining that motion was at the instance of the plaintiffs. The motion to vacate was taken up on April 1st, and continued from time to time, and never was determined by the district court until it was coerced by this court. The hearing was completed April 6th, and the motion denied April 10th. On April 5th the defendants, by written notice served upon the plaintiffs, offered to do and perform everything that the plaintiffs endeavored to procure to be done, and to allow judgment to be entered against themselves in favor of the plaintiffs for all costs. Defendants promptly appealed from the order of April 10th overruling their motion to vacate the appointment of the receiver, and on the 13th day of the same month this court, pending the appeal, ordered that all the property then in possession of the receiver be turned back to the defendants upon their executing a satisfactory bond. (22 Mont. 430, 56 Pac. 868.) This was done. On June 8, 1900, the order of the district court denying the motion to vacate the order appointing the receiver was reversed (24 Mont. 153, 61 Pac. 309), for the reason that the defendants had remedied the evils complained of in the plaintiffs' complaint, and there was no longer any just reason why a receiver should be had. Therefore, in one of the appeals, the appointment of the receiver in the first instance was held valid.

There were not any services rendered by anybody whomsoever in the matter of the receivership after April 13th; still the receiver claims compensation for a period of time extending from December 15, 1898, until the 18th day of July, 1900. He was in possession of the property not exceeding six days—from April 8th to 13th, inclusive. There is not in the record sufficient information in reference to his personal expenses to enable this court to determine either as to their necessity, or whether the items of expense were incurred before or after the

time he properly should have been discharged on the motion
of February 28th.   Therefore it appears to us that the district
court erred in allowing said expense account on the evidence
adduced; and the other expenses, to-wit, $14,000 for "assistant
receiver" (that is, superintendent, James T. Stanford, in
charge of the defendants' property at Great Falls); $1,000
for Austin Brown, metallurgist; $10,000 for W. Y. Pember-
ton, as counsel; $5,000 for J. B. McClernan, as assistant coun-
sel; $500 for services of M. M. Leiter, as counsel to Supt.
Stanford; and $500 for J. J. Harrington, as bookkeeper (ex-
cepting, perhaps, part of the expense incurred for bookkeeper)
all appear to have been incurred after the 5th day of April,
1900, excepting, perhaps, the items as to W. Y. Pemberton and
J. B. McClernan, there being nothing definite in the record to
show when they were employed or what services they rendered,
and are not expenses which on any just principles should be
paid from the property of the defendants.   In no event can
fees be allowed for counsel to the superintendent or other em-
ployes of a receiver.

It is not necessary to waste time or space in citing authorities
to support the proposition that a defendant in a receivership
proceeding should not have its property taken to pay the ex-
penses of a receiver unlawfully and unjustly kept in office as
an officer of the court, when justice requires his discharge.   We
merely refer to *McAnrow* v. *Martin,* 183 Ill. 467, 56 N. E.
168; *Ogden City* v. *Bear Lake & R. W. & I. Co.,* 18 Utah,
279, 55 Pac. 385; *Willis* v. *Sharp,* 58 Hun. 608, 12 N. Y.
Supp. at page 120; High on Receivers (2d Ed.), 796, and
cases cited.   We add that the evidence shows that until the
"fore part" of April, 1899, the receiver availed himself of the
advice and counsel of the attorneys of the plaintiffs in the re-
ceivership proceedings.

Even if the court had been right in refusing to discharge the
receiver, and he had been justly in the possession of the said
property, the allowance of a fee of $200,000 would have been
excessive, and abuse of discretion on the part of the court.   The

allowance of such a fee under the circumstances, and in the light of the history of this case as narrated and referred to above, was gross abuse of discretion. Confiscation of the property of the defendant should not follow the appointment of a receiver. For remarks and facts which are very pertinent, we refer to the opinion of Judge Brewer in *Central Trust Co. v. Wabash, St. Louis & P. Ry. Co.,* (C. C.) 32 Fed. 187.

The receiver seems to rely somewhat upon certain acts of violence exhibited toward him by the defendants and their agents as important reasons why he should receive extraordinary compensation. He testified that the defendants resisted him, threatening him with injury, and offered to assault him, in order to prevent his taking possession of the property. When this violence was exhibited is not clear, but it seems to be charged as happening after April 1, 1898. It may be that the defendants were in contempt of court in resisting the receiver, and it may be that the state of Montana should prosecute the agents of defendants for violation of the law against crime; but we do not understand that the property of the defendants should be taken to pay the receiver what the state might recover as a fine, or that Thomas R. Hinds, as a private citizen, might recover as damages in the proper suit.

Inasmuch as the receiver should have been, in justice, discharged certainly as early as April 5, 1898, when the defendant offered, in writing, to do the very things that the plaintiffs prayed to have done by decree of court, we hold that he may be compensated in a reasonable sum for services rendered by him prior to said last-mentioned date, and be reimbursed for all proper and reasonable expenses incurred prior thereto, and that he receive nothing and be allowed nothing for any services or expenses alleged to have been rendered or incurred after that date out of the property of the defendants, excepting, possibly, a reasonable sum for services of a bookkeeper aiding in rendition of accounts to the court.

If it be conceded that, under the present statute (Laws Second Extraordinary Sess. 1903, Chapter 1), we have authority

to review and determine this case *de novo,* we have to say that, owing to the meager evidence appearing in the record, it would be impossible for us to arrive at a just and satisfactory conclusion as to how much should be allowed the receiver for his expenses and compensation.

The judgment of the district court appealed from is reversed.

*Reversed.*

Mr. Justice Holloway: I dissent. I do not agree with the majority of the court in the disposition that is made of this case. The Second extraordinary session of the Eighth legislative assembly passed an Act amending Section 21 of the Code of Civil Procedure. Among other things, that section, as now amended, provides: "In equity cases, and in matters and proceedings of an equitable nature, the supreme court shall review all questions of fact arising upon the evidence presented in the record, * * * and determine the same, as well as questions of law, unless, for good cause, a new trial or the taking of further evidence in the court below be ordered." The manifest purpose of the legislature in passing this Act was to enable this court, upon appeals in equity cases, and in proceedings of an equitable character, to finally dispose of the cause, either by making the proper order itself, or by directing specifically what disposition should be made of the cause in the court below. This legislation is binding upon this court, and, in my opinion, should be followed in every instance where the record presents sufficient evidence to enable us to finally dispose of the litigation, thereby obviating new trials and subsequent appeals. I am of the opinion that the evidence in this record is sufficient to enable this court to determine which items of compensation should be allowed, which should be disallowed, and the amount that should be allowed in those instances where the compensation fixed by the lower court is deemed excessive. ·