14 N.J. Super. 353 (1951)
82 A.2d 441
CHARLES VICTOR SAMPSON, PETITIONER-APPELLANT,
v.
CHARLES F. THORNTON, RESPONDENT-RESPONDENT.
Superior Court of New Jersey, Appellate Division.
Argued June 11, 1951.
Decided July 10, 1951.
*354 Before Judges McGEEHAN, JAYNE and WM. J. BRENNAN, JR.
Mr. Russell Fleming argued the cause for appellant (Mr. St. Elmo Ferrara, attorney).
Mr. Roland Vreeland argued the cause for respondent (Mr. Gerald T. Foley, attorney).
The opinion of the court was delivered by McGEEHAN, S.J.A.D.
Was the petition for workmen's compensation filed within two years after the last payment of compensation (R.S. 34:15-51)?
On October 19, 1946, the petitioner was injured in an accident which arose out of and in the course of his employment. The employer paid him $25 per week temporary disability for the period from October 19, 1946, to December 30, 1946, and on June 3, 1947, paid him $137.50, representing one per cent of total for permanent disability. On June 11, 1948, the employee, at the request of the employer's insurance carrier, made a visit to Dr. Sherman. The petition for workmen's compensation was filed on August 2, 1949.
The crucial question before us, as it was before the Division of Workmen's Compensation and before the County Court, is whether the visit to Dr. Sherman in June, 1948, constituted a medical treatment furnished by the employer for the particular injury, and thus a payment of compensation. Donoher v. American Steel & Wire Co., 2 N.J. Super. 72 (App. Div. *355 1949). Holding that it did, the Division of Workmen's Compensation awarded the petitioner temporary disability for ten and two-sevenths weeks amounting to $257.14 theretofore paid, and permanent disability at 35 per cent of total, amounting to $4,812.50 less $137.50 already paid. On appeal, the Hunterdon County Court reversed, holding that the visit of June 11, 1948, constituted no more than a mere examination of an injured employee by a physician engaged by the employer's insurance carrier, and did not constitute a medical treatment.
The facts are not in dispute. At about 5 P.M. on October 19, 1946, petitioner was thrown from a tractor. When he regained consciousness the following morning, he was in the Somerset Hospital. He was injured about the head, suffering a laceration requiring nine or ten sutures and damage to the right mastoid area. His employer visited him at the hospital and told him "that he was paying insurance and they would take care of it" and that petitioner should not worry. He was also visited at the hospital by a representative of the employer's insurance carrier (hereinafter referred to as the "company"), who told him "You will get compensation until you can do light work, then you will be paid in a lump sum for suffering and damages." The petitioner relied on these statements and thereafter sought no independent medical advice, but depended entirely upon the company for the furnishing of such medical, surgical and other treatment and hospital services as should be necessary to cure and relieve him of the effects of the injury. Cf. R.S. 34:15-15. Dr. Barber, who was employed and paid by the company, visited him each day during his three-week stay in the hospital and thereafter saw the petitioner two or three times. While he was in the hospital, Dr. Fitch, who was employed and paid by the company, examined him. After the petitioner left the hospital, the company told him to go and see Dr. Fitch at his office; the company made the appointment and the petitioner kept it. On January 8, 1947, and on May 13, 1947, at the company's request, he visited Dr. Sherman, *356 and on these visits drops were placed in his eyes and he was given several tests. Thereafter, on June 3, 1947, he was paid $137.50, representing one per cent of total for permanent disability.
On April 4, 1948, the petitioner wrote the company as follows:
"In regards to my accident, seventeen months ago I was to receive twenty-five dollars a week until I could do light work, then I was to be paid a lump sum for loss of time and suffering that I was told by your representative.
Up until now I have not received same. My eye is not right yet and the State Highway Dept. will not pass it on the road test. Thought I would write to you and see if you could do something about it before I give it to my counsel. Hoping you look into this very soon. I think I have given this plenty time to erect itself. I also get great pains in my head at times."
In response to this letter, Mr. Moore, a company representative, visited the petitioner and told him that he, the petitioner, had gotten all he was entitled to get, but that "he'd see if he could get more for me." The petitioner never heard from Mr. Moore thereafter. Later, someone from the company called the petitioner and told him to make an appointment with Dr. Sherman. In accordance with this direction, the petitioner visited Dr. Sherman on June 11, 1948. According to the petitioner, Dr. Sherman on this visit did "the same as all other examinations. He went through the same routine: examined my eye and my ear for sight and hearing" and "he examined me and said nothing, only routine conversation." Dr. Sherman testified that the company arranged with him for the visit in June, 1948 "to make an examination of Mr. Sampson's eyes and ears" and that on this occasion, as on the two prior visits, he merely examined the petitioner and did not treat him. Further, that he "assumed probably that he was under either treatment or observation by some doctor"; that as to measures that might be helpful, "I wasn't asked and I saw no reasons why I should make any recommendations under the circumstances"; that "I made no prescription for glasses at any *357 time, didn't change his prescription and I did find that what he was wearing was not enough out of the way to suggest any change"; and "Well, this is the kind of a case where, if I haven't forgotten my Latin, medicatus naturi steps in and the patient needs very little, if any, medical treatment. In other words, a condition such as he has and his case did apparently clear up to a great extent without, well, whatever treatment he had I don't know what he had except what I have heard here this morning. I don't know what helped in the way of treatment, but they often improve a great deal without treatment."
The County Court held that public policy requires that an employer or employer's insurance carrier be entitled to a mere medical examination without any treatment, without having it constitute a "payment of compensation" from which the two-year limitation shall run. The employee does not question this. Cf. R.S. 34:15-19.
In concluding that the visit of June, 1948, was a mere examination and not the furnishing of medical treatment, the County Court relied on Hunt v. Industrial Accident Commission, 43 Cal. App. 373, 185 P. 215 (Dist. Ct. of App. Cal. 1919) and Garden Farm Dairy v. Dorchak, 102 Colo. 36, 76 P.2d 743 (Sup. Ct. 1938). We do not deem these cases analogous. In the Hunt case, the injured employee received independent medical treatment and returned to work. Then he went to the company's physician for an examination four or five times, but received no treatment or medicine on any of these occasions. He was later discharged and after his discharge he made a claim for compensation to the claims attorney of his former employer and was then sent for examination as to his physical condition to its physician, but no medical or surgical treatment was given. In the Garden Farm Dairy case, the employee filed his claim with the industrial commission, and the insurance carrier filed a denial of liability. The insurance company then procured an examination of the claimant by a physician and surgeon, who neither gave nor suggested any treatment. Cf. R.S. 34:15-19.
*358 In Thompson v. Swenson Const. Co., 158 Kan. 49, 145 P.2d 166 (Sup. Ct. 1944), a visit to a doctor by the employee, at the request of the insurance carrier, was held to be a mere examination and not to constitute medical treatment. But there the request of the insurance carrier was contained in a letter to the employee, stating: "It is requested you appear at your earliest convenience at the office of W.J. Feehan * * * for an examination only of your left leg and ankle. You understand that we are not nor Dr. Feehan at this time tendering or rendering any form of treatment. This visit to Dr. Feehan for this examination is therefore independent of any treatment we may have rendered you in the past."
This employer offered to and did furnish all the medical, surgical and hospital treatment for the employee; the employee relied on the offer and never sought or received independent medical treatment or advice; the injuries were such that visits to a doctor did not necessarily result in a prescription, the furnishing of any appliance or medicine, or even particular advice on the care or treatment of the injury; and no suggestion was made to the employee by the employer, the company or Dr. Sherman that the visit of June, 1948, to Dr. Sherman was for a more limited purpose, namely, for mere examination only and not for treatment, than the visits to Dr. Barber, Dr. Fitch and the two visits to Dr. Sherman theretofore made by him. In the circumstances, we find that the June, 1948, visit constituted a medical treatment furnished by the employer for the particular injury, and thus a payment of compensation. Therefore, the petition was filed within the time prescribed by law. R.S. 34:15-51; Donoher v. American Steel & Wire Co., above.
Judgment reversed.